**F I L E D**

PUBLISH

**June 29, 2005**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CHINH TRONG NGUYEN,

Defendant-Appellant.

No. 04-6167

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CR-03-189-A)**

Jack D. Fisher, Edmond, Oklahoma, for Defendant-Appellant.

Arlene Johnson, Assistant United States Attorney, (Robert G. McCampbell, United States Attorney, Sanford C. Coats and Randal A. Sengel, Assistant United States Attorneys, with her on the brief) United States Attorney's Office, Oklahoma City, Oklahoma, for Plaintiff-Appellee.

Before **O'BRIEN** , **HOLLOWAY** , and **TYMKOVICH** , Circuit Judges.

**TYMKOVICH** , Circuit Judge.

Chinh Trong Nguyen was indicted on three counts of distributing pseudoephedrine with reasonable cause to believe it would be used to manufacture a controlled substance, in violation of 21 U.S.C. § 841(c)(2). The indictments arose from a 2003 Oklahoma City police sting in which Nguyen sold thousands of pseudoephedrine pills to an undercover officer in three different transactions occurring on July 31, August 12, and August 26, 2003. A jury convicted Nguyen on two counts concerning the first two transactions, and the court sentenced Nguyen to 151 months in prison.

In this direct appeal, Nguyen makes five arguments: (1) the government presented insufficient evidence to convict him; (2) he was entrapped as a matter of law on the two transactions for which he was convicted; (3) the district court abused its discretion by failing to submit a proposed entrapment instruction as to the third count; (4) his trial counsel rendered ineffective assistance of counsel; and (5) his sentence is unconstitutional under the Supreme Court's recent sentencing decisions in *United States v. Booker*, 125 S. Ct. 738 (2005), and *Blakely v. Washington*, 124 S. Ct. 2531 (2004).

We affirm the convictions and sentence.

## I. BACKGROUND

Nguyen operated two convenience stores located in Oklahoma City. On three separate occasions in July and August 2003, Nguyen sold a total of more

than 10,000 pseudoephedrine pills to undercover Oklahoma police sergeant John Carroll, who was working on a federal drug task force in cooperation with the Drug Enforcement Administration.

Carroll first approached Nguyen at one of his convenience stores on July 30, 2003, and expressed interest in buying large quantities of pseudoephedrine pills. Nguyen responded by identifying himself only as "Joe" and asked Carroll for the names of the "friends" who had referred Carroll to Nguyen. Carroll replied that his friends were "Franklin" (the face on a one hundred dollar bill) and "Grant" (the face on a fifty dollar bill). This apparently satisfied Nguyen, who agreed to sell Carroll 2500 pseudoephedrine pills. The next day Carroll returned to pick up the pills. Nguyen placed them in a paper sack and did not ring up the sale on his cash register; instead, he placed the money, $1000 cash, in his pocket. Carroll then asked Nguyen how many pills he could buy per week, and Nguyen stated that he "did not know [Carroll] very well" and would have to "get to know [Carroll] better" before answering. Carroll stated he was going to wait a moment to make sure no police officers came to arrest him, and Nguyen stated that he would do the same. Before leaving, Carroll told Nguyen that he would know by the weekend if the pseudoephedrine "cooks up" and "separates" well. Nguyen also told Carroll he had a "better" but more expensive brand of pseudoephedrine available for purchase.

On August 12, Carroll returned to Nguyen's store and purchased an additional 2592 pills for $1000 cash. As requested, Nguyen gave the pills to Carroll in a plastic Tupperware container. Carroll again discussed his plans for the pills:

> I asked [Nguyen] if this [kind of pill] worked better, and he did not indicate better, he just said it was more popular. I then told him I don't cook it but my partner does, and then told him if I go switching on him he'd probably get mad at me. I then indicated that, you know, I was just a broker. And he indicated, basically, that he was the middleman. And I said that we're in this to make money and somebody's got to do it. And he indicated to me that the next dealing he would go back to the other stuff, which I took he was referring to the major brand hundred-count bottles.

ROA at 102-103. Carroll also told Nguyen his "partner" had recently attended a bike rally and had made some good "contacts," and he would therefore like to double his order to pick up 5000 tablets the following week. Nguyen agreed to the transaction.

Several days after this second encounter, on August 15, DEA Agent Michele Sanders visited Nguyen in order to issue him a "red notice." According to Sanders's testimony, the DEA routinely visits convenience stores in Nguyen's area to issue such notices. The standard "red notice" document warns that pseudoephedrine can be diverted to criminal drug production and informs recipients about the state and federal laws regarding sales of these products. Sanders testified she specifically informed Nguyen that persons seeking to

-4-

purchase large quantities of pseudoephedrine should be a "red flag" for criminal activity. Nguyen responded that he understood the materials Sanders provided and would act in accordance with her instructions. Nguyen also falsely told Sanders he never sold more than two bottles of pseudoephedrine to any one customer.

On August 22, Carroll and Nguyen negotiated for the purchase of another 5000 pills for $2000 cash. Carroll returned on August 26 to pick up the pills. This time Nguyen placed the bottles in two paper sacks, and Carroll told him he would be making "the cook" do "a lot more work," because the "cook" would have to open each bottle and take out the pills. Following this transaction, agents entered the store and arrested Nguyen. Following the arrest, authorities searched Nguyen's business and apartment, where they found receipts evidencing the purchase of over 200,000 additional pseudoephedrine pills (approximately 2000 bottles of the drug), dated January to August, 2003. Only twelve bottles of the drug were actually recovered from Nguyen's two stores and apartment.

Nguyen was subsequently charged with three separate counts of distributing pseudoephedrine knowing it would be used to manufacture a controlled substance. A federal jury convicted Nguyen on two counts arising from the July 31 and August 12 transactions. The jury, however, failed to reach a verdict on charges arising from the August 26 transaction, which was later dismissed on the

government's motion. The court sentenced Nguyen to 151 months in prison, the bottom of the United States Sentencing Guidelines recommended range of 151 to 188 months.

## II. ANALYSIS

### A. Sufficiency of the Evidence

We first address Nguyen's argument that the evidence is insufficient to convict him. "Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." *United States v. Nelson*, 383 F.3d 1227, 1229 (10th Cir. 2004). Evidence is evaluated by "considering the collective inferences to be drawn from the evidence as a whole." *Id.* (quoting *United States v. Wilson*, 107 F.3d 774, 778 (10th Cir. 1997). "Intent" may be proven via circumstantial evidence; in fact, it is rarely established by other means. *United States v. Swindler*, 476 F.2d 167, 170 at n.2 (10th Cir. 1973). We do not weigh conflicting evidence or second-guess the fact-finding decisions of the jury. *Van Nattan v. United States*, 357 F.2d 161, 162 (10th Cir. 1966).

The statute under which Nguyen was convicted provides that "[a]ny person who knowingly or intentionally possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be

used to manufacture a controlled substance . . . shall be fined . . . or imprisoned." 21 U.S.C. § 841(c)(2). After reviewing the record, we believe there is ample evidence for a rational trier of fact to find the essential elements of the crime. We address the relevant evidence in turn.

*The Written Notices.* Well before the transactions that led to his arrest, Nguyen was put on notice that pseudoephedrine sales could be linked to drug charges. As a retail merchant carrying cold medications containing a precursor chemical, Nguyen completed an application with his supplier that required him to sign a document stating that "applicant's signature affirms distributor responsibility and compliance with all applicable laws. Applicant . . . understands all rules pertaining to sales of pseudoephedrine." Directly above Nguyen's signature, dated in early 2003, was the statement "I/We will not sell more than three boxes of pseudoephedrine . . . to any one customer. . . ."

Nguyen received similar notices from his wholesalers. For example, one invoice given to him by a supplier stated:

> Important notice: Pseudoephedrine and Ephedrine combination products are regulated by law. Drug Enforcement Administration limitations are nine grams per single transaction per customer within a 30-day period. Drug Enforcement Administration regulations also require that these products not be moved from store premises for any reason until sold or returned to distributor.

ROA at 163. During their search of Nguyen's store, officers also uncovered a letter Nguyen received from American Novelties, Inc., a drug distributor, in mid-2003. The letter stated:

> [A]s one of our customers of pseudoephedrine products, you are already aware of the need to maintain effective controls over products such as this that are sometimes diverted to illegal uses . . . [I]t goes without saying that you should never, under any circumstances, sell these products to anyone who indicates that they are buying these products for illegal use.

ROA at 165-167. These notices could reasonably be interpreted by a jury as evidence that during his various transactions with Carroll, Nguyen was well aware that when a customer requests suspiciously large amounts of pseudoephedrine, it is likely the customer is engaged in illicit drug manufacturing.

*Quantity of Pills Sold.* Nguyen's disregard for the restrictions on large purchases of pseudoephedrine became evident soon after he received these warnings from his suppliers. As described above, the record shows Nguyen obtained over 200,000 pills in the months before his transactions with Carroll, most of which were never recovered by authorities. In addition, Nguyen drew attention to himself by purchasing the drug from as many as nine different wholesalers.

Furthermore, Nguyen's sales to Carroll were substantial. In their first transaction, Nguyen sold Carroll 2500 pills; in the second, 2592 pills; in the final transaction, 5000 pills. In a little over a month, then, Carroll purchased over

10,000 pills.  Nguyen received $4000 in cash for the transactions.  As Agent Sanders pointed out at trial, the recommended maximum dosage for pseudoephedrine is four tablets in 24 hours.  Thus, Nguyen sold Carroll an amount equivalent to a seven-year supply.  This could reasonably be interpreted by a jury as evidence that Nguyen knew, or had reasonable cause to believe, that he was supplying the drug for the illegal manufacture of methamphetamine, not ordinary household use.

*Price of the Pills*.  Nguyen sold the pills to Carroll for approximately $40 per bottle.  The actual retail value of each bottle is $5-$7.  This evidence could reasonably be interpreted by a jury as evidence that Nguyen was attempting to capitalize on his knowledge that the transactions were illegal.

*Nguyen's Behavior During the First Two Sales.*  During initial conversations with Carroll, Nguyen asked Carroll to provide the names of his "friends."  When Carroll asked how many pills he could get per week, Nguyen responded that he would have to "get to know" Carroll before answering.  Such conversations do not typically take place in a legal sale of pseudoephedrine when it is used as a cold remedy.  Furthermore, Nguyen did not ring up either of the first two transactions on the store cash register; he merely pocketed the cash Carroll gave him.  On at least one occasion, when another customer entered the store, Nguyen halted his conversation with Carroll and waited to resume it.

Finally, Carroll made numerous references to the manufacture of methamphetamine that provided Nguyen reasonable cause to know the pseudoephedrine would be used for an illicit purpose. Carroll told Nguyen he liked a particular brand because it "cooks" better. After the first sale, Carroll expressed concern that the police might arrive. Carroll also referred to prices he would have to charge his "customers." A jury could reasonably interpret these facts as evidence that Nguyen knew, or had reasonable cause to believe, that the pills were being used for an illegal purpose. In any case, his conduct hardly appears to be the sort typically associated with a wholly legal transaction.

Accordingly, after examining the totality of evidence presented to the jury, we conclude the government presented sufficient evidence for a rational trier of fact to convict Nguyen. The record is replete with testimony that, if credited by the jury, would establish the elements of the charged crime. In short, the ample direct and circumstantial evidence here supports a conclusion that Nguyen knowingly supplied pills that were intended for the illegal production and distribution of methamphetamine.

## B. Entrapment

Nguyen argues on appeal he was entrapped into making the first sale to the DEA agent. The subsequent transactions, according to Nguyen, arose from this initial entrapment, and are similarly tainted.

Nguyen makes two related arguments.  First, that the facts compel a finding that he was entrapped as a matter of law as to all three transactions.  In other words, a reasonable jury could not construe the facts as anything but a lack of willingness or predisposition on Nguyen's part to engage in the charged crimes.  His second argument is that the district court abused its discretion by failing to offer an entrapment instruction on the last of the three transactions with Carroll, while agreeing to an instruction for the prior two transactions.  As a result of the court's failure to instruct on the third count, even though the jury did not convict, Nguyen claims his counsel was forced into a "Hobson's Choice" at trial—either forego the instructions as a whole (which he did), or bring unwanted attention to the third transaction by accepting an entrapment instruction only as to the first two transactions.

### 1.  Entrapment as a Matter of Law

"Entrapment exists as a matter of law only if the evidence of entrapment is uncontradicted."  *United States v. Garcia*, 182 F.3d 1165, 1168 (10th Cir. 1999) (quoting *United States v. Martinez*, 979 F.2d 1424, 1429 (10th Cir.1992)); *see also United States v. Dozal-Bencomo*, 952 F.2d 1246, 1250 (10th Cir. 1991).  In other words, entrapment as a matter of law exists "only when there is undisputed testimony which shows *conclusively* and *unmistakably* that an otherwise innocent person was induced to commit the [criminal] act." *United States v. Fadel*, 844

-11-

F.2d 1425, 1434 (10th Cir. 1988) (quoting *United States v. Gurule*, 522 F.2d 20 (10th Cir. 1975) (emphasis added).

To obtain an entrapment instruction, a defendant must establish two elements: "first, government agents must have *induced* the defendant to commit the offense; and second, the defendant must not have been otherwise *predisposed* to commit the offense, given the opportunity. Once a credible entrapment defense is raised, the prosecution has the burden of proving, beyond a reasonable doubt, that a defendant was not entrapped." *United States v. Young*, 954 F.2d 614, 616 (10th Cir. 1992) (citing *Fadel*, 844 F.2d at 1429).

Inducement is "government conduct which creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense." *United States v. Scull*, 321 F.3d 1270, 1275 (10th Cir. 2003) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 (10th Cir. 1986)). Simple "[e]vidence that a government agent solicited, requested, or approached the defendant to engage in criminal conduct, standing alone, is insufficient to constitute inducement. Inducement also will not be shown by evidence that the government agent initiated the contact with the defendant or proposed the crime." *Ortiz*, 804 F.2d at 1165 Predisposition, in contrast, is a "a defendant's inclination to engage in the illegal activity for which he has been charged, i.e., that he is ready and willing to commit the crime." *Id.* "Predisposition to commit a criminal act may be shown

by evidence of similar prior illegal acts or it may be "inferred from 'defendant's desire for profit, his eagerness to participate in the transaction, his ready response to the government's inducement offer, or his demonstrated knowledge or experience in the criminal activity." *United States v. Duran*, 133 F.3d 1324, 1335 (10th Cir. 1998) (citing *Dozal-Bencomo*, 952 F.2d at 1251 (10th Cir.1991).

The defendant's predisposition is viewed at the time the government agent first approaches the defendant, but "inferences about that predisposition may be drawn from events occurring after the two parties came into contact." *Garcia*, 182 F.3d at 1169; *see also Duran*, 133 F.3d at 1336 (finding sufficient evidence of predisposition where a defendant "bragged" to a government informant about his ability to obtain drugs); *United States v. Mendoza-Salgado*, 964 F.2d 993, 1003 (10th Cir. 1992) (defendant's "solicitous telephone discussions with [the government agent] regarding defendant's ability to supply cocaine, his express interest in handling future drug purchases and his attendance at the preliminary meeting between [his supplier] and agents exemplifies a profound eagerness to engage in the illegal activity").

The evidence in this case falls far short of pointing "conclusively" and "unmistakably" to entrapment as a matter of law. First, there was substantial evidence that Nguyen was not induced to engage in the two initial transactions. Well before he was approached by Carroll, for example, Nguyen had been given

notices about the hazards of illegal pseudoephedrine trafficking in Oklahoma City; notwithstanding these notices, he had already embarked on a program of obtaining large quantities of the drug, far beyond what would be necessary for the normal day-to-day business of a neighborhood convenience store. In addition, the record shows Carroll did not threaten, coerce, plead, or attempt to persuade Nguyen in a manner that could reasonably be construed as overcoming the resistance of a heretofore law-abiding citizen. Finally, from the outset of his encounters with Carroll and throughout each transaction, Nguyen seemed to be familiar with the illegal sale of pseudoephedrine—he did not sell the pills for their regular price; he stopped discussing matters whenever other customers entered the store; he took large cash payments; he pocketed Carroll's money instead of placing it in the cash register; he was prepared to package the pills in a less-identifiable container; and he was concerned about who Carroll's "friends" were. This is not the conduct of an "otherwise innocent person." *Fadel*, 844 F.2d at 1434.

In short, ample evidence was presented for a jury to conclude that Nguyen was a willing participant in a criminal scheme. Accordingly, we conclude Nguyen was not entrapped as a matter of law.

### 2. Entrapment as to the Final Transaction

At the close of the evidence, Nguyen asked for entrapment instructions as to all three transactions. The district court rejected a blanket instruction and instead offered to issue an entrapment instruction as to the first two transactions, but not the final transaction following the "red notice." The court was satisfied that the first two transactions could support an entrapment defense if the jury believed the defense theory that Nguyen unwittingly found himself drawn into the sale of large quantities of pills.

As to the third transaction, however, the undisputed evidence showed (1) prior to the transaction Nguyen learned via the red notice that the pills could be used for illicit drug manufacturing; (2) Agent Sanders clearly communicated the potential criminality of selling large quantities of pills; (3) Nguyen falsely denied buying large amounts of the drug when he had placed substantial orders since the beginning of 2003 with nine wholesalers; (4) he also denied selling more than two bottles of the drug per customer when he had already sold over 5000 pills (50 bottles) to Carroll; and, finally (5) Carroll told Nguyen that the pills would be "cooked" by a subsequent purchaser. Thus, the court refused to offer an entrapment instruction to the jury.

Nonetheless, Nguyen argues the evidence still required an entrapment instruction. His theory is quite simple: since there was a jury question as to entrapment regarding the initial encounter, it follows there is a jury question as to

entrapment for all subsequent encounters. In essence, Nguyen argues all of his conduct after the first encounter is tainted by the government's prior alleged inducements.

Nguyen's theory is based loosely on a single sentence from the Supreme Court's decision in *Jacobson v. United States*, 503 U.S. 540 (1992). There, the Court held that once "inducement" is at issue in a case, "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act *prior to first being approached* by Government agents." *Id.* at 549 (emphasis added). From this language, Nguyen argues a blanket entitlement to an entrapment instruction for serial criminal acts. We disagree. *Jacobson* does not immunize all subsequent criminal conduct from the required threshold showing of inducement and lack of predisposition before an entrapment instruction may issue.

Our case law supports this view. We previously interpreted *Jacobson* as consistent with an individualized treatment of the entrapment defense in multiple transaction crimes. In *United States v. Beal*, 961 F.2d 1512 (10th Cir. 1992), issued only a few months after *Jacobson*, the defendant was charged with participating in two transactions which resulted in the sale of a controlled substance to an undercover police officer. Beal admitted the nature and substance of the transactions but claimed his participation was the result of entrapment by a government informant. The entrapment defense was the only issue submitted to

the jury, which returned verdicts of not guilty on the first count but guilty on the second. Ruling upon a subsequent motion for judgment of acquittal, the trial court concluded that, on the record before it, the two transactions were "so closely connected" that the defendant was induced to commit the second transaction by the same influences which caused him to commit the first. We agreed and held them to be a singular incident: "There is nothing contained in the government's proof which provides a factual distinction between defendant's manifested state of mind during those [two] transactions." *Id.* at 1517. However, we explicitly refused to adopt "as a general rule that once entrapment occurs, a defendant's subsequent willing acts are immunized from culpability." *Id.*

Other circuits have agreed with this reasoning. The District of Columbia Circuit, for example, interprets *Jacobson* to "mean only that the government must prove that the defendant's disposition was independent and not the product of the attention that the Government directed at the defendant." *United States v. Vaughn*, 80 F.3d 549, 552 (D.C. Cir. 1996) (citations omitted). Similarly, the Sixth Circuit explained "*Jacobson* does not prohibit the Government from inducing bad people to commit crimes; it simply strengthens the requirement that the Government prove that its agents did not induce the defendant's criminality." *United States v. Kussmaul*, 987 F.2d 345, 349 (6th Cir. 1993).

Based on these principles, the district court did not err in this case. In contrast with *Jacobson* and *Beal*, the record supports the court's conclusion that the last transaction between Carroll and Nguyen consisted of its own bargaining, its own request by Carroll and fulfillment by Nguyen, and its own temporal moment. The evidence demonstrates Nguyen possessed the requisite predisposition independent of Carroll's solicitation—(1) the "red notice" given to Nguyen; (2) his untrue statements to Agent Sanders about prior orders and sales; combined with (3) the receipts found in his apartment; (4) the pill distributors' warnings; (5) the ease with which he entered the transactions; and (6) Carroll's bald statements suggesting drug manufacturing. In light of this evidence, it is hard to dispute that Nguyen was predisposed to commit the last transaction. As the district court correctly concluded, the record did not support a jury question as to entrapment.

This is not to say, however, as in *Beal*, 961 F.2d at 1516-17, where the trial testimony shows closely connected transactions without any intervening events, a jury question may be present as to whether the subsequent transaction arose from the government's inducement of prior transactions. *See e.g., Vaughn*, 80 F.3d 549 (D.C. Cir. 1996). But such is not the case here.

In sum, Nguyen posits a law of entrapment that embraces a concept of "original sin." That interpretation has some appeal. But we agree with the

observation of Judge Randolph in construing *Jacobson*: "Sinners may become saints and saints may become sinners. Nothing is necessarily permanent about either state. A person might be disposed to commit a crime one day and not disposed to do so some time later." *Vaughn*, 80 F.3d at 552. *Jacobson* itself supports this interpretation. In that case, by the time the defendant had finally placed his *single* order for illegal child pornography, he had already been the target of 26 months of repeated mailings and communications from Government agents and fictitious organizations. As the Court explained, "[t]he evidence that petitioner was ready and willing to commit the offense came only after the Government had devoted 2 ½ years to convincing him that he had or should have the right to engage in the very behavior proscribed by law." *Jacobson*, 503 U.S. at 553.

In our view, *Jacobson* merely requires in a multiple count case where the evidence supports an entrapment instruction, the evidence must support an instruction for each count. Even an initial inducement by the government does not irremediably taint all subsequent encounters with law enforcement. No entrapment corollary to the Fourth Amendment's "fruit of the poisonous tree" doctrine exists. As a matter of logic and common sense, each encounter must be tested on its own merits, and it is the defendant's burden to show that the evidence supports an entrapment instruction.

Accordingly, we conclude the district court did not abuse its discretion in refusing the instruction as to the last count.

## C. Ineffective Assistance of Counsel

Nguyen next argues that his trial counsel was ineffective in declining an entrapment instruction after the court ruled that it would issue the instruction for the first two transactions only. Although we ordinarily do not address ineffective assistance of counsel claims on direct review, *see United States v. Galloway,* 56 F.3d 1239, 1241 (10th Cir. 1995) (en banc) ("[T]here is only a slight chance that we will forego the development of a factual record or at least an opinion by the district court on the subject in the first instance."), in this case we are satisfied Nguyen's counsel was not ineffective for failing to prevail on his entrapment arguments at the trial level.

The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington,* 466 U.S. 668 (1984). *Strickland* requires a defendant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Where it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes

"virtually unchallengeable." *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002). The defendant, in short, must show both that his counsel's conduct was "deficient" and that the attorney's sub-par conduct "prejudiced" his defense. *Id.* at 776.

Nguyen's trial counsel was not deficient under *Strickland*. As we discussed above, the district court did not err in offering a limited entrapment jury instruction for the first two transactions. Counsel capably argued that the instruction was appropriate for all three encounters, but the court viewed the evidence and law differently (and correctly). In light of the court's ruling, Nguyen's attorney stated that he would "rather not" have the instruction as to the first two counts without the instruction applying to the third. He explained this strategic choice to the court: Given the facts of this case, he did not wish to draw attention to the last transaction for which the instruction was not given.

We are hard pressed to find this informed choice "deficient" under any formulation of *Strickland*. In fact, it was a reasonable response to a difficult situation. And to the extent Nguyen faults his lawyer on appeal for losing his "fruit of the poisonous tree" argument by not citing *Jacobson*, we have explained above why the district court was correct in its interpretation of the law. In short, trial counsel's choice to decline entrapment instructions on the first two counts was an adequately informed strategic choice.

Accordingly, Nguyen's claim of ineffective assistance of counsel is denied.

**D. Sentencing Issues**

Nguyen's final argument is that the district court erred in sentencing him under the Supreme Court's recent decision *United States v. Booker*, 125 S. Ct. 738 (2005). Under *Booker*, a sentencing court can commit two types of sentencing error: first, "a court could err by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily," so-called "constitutional error"; and, second, "a sentencing court could err by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion, even though the resulting sentence was calculated solely upon facts that were admitted by the defendant, found by the jury, or based upon the fact of a prior conviction," so-called "non-constitutional error." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731-32 (10th Cir. 2005) (internal quotations omitted). Non-constitutional *Booker* error is obviously present in every pre-*Booker* case while constitutional *Booker* error is present only in cases where the sentencing court found facts by a preponderance of the evidence that increased the defendant's sentence beyond what the jury verdict, admitted facts, or a guilty plea alone would support.

This case presents both types of error. Nguyen's presentence report calculated his base offense level to be 34 based on 600 grams of pseudoephedrine.

The PSR's determination was based upon the 2500 pills purchased in the first transaction, 2592 pills purchased in the second transaction, and 5000 pills purchased in the third transaction.[1]  There were no enhancements or adjustments to the base offense level, which yielded a Guideline range of 151 to 188 months. Since the jury was never instructed with respect to the amount of pseudoephedrine sold in each transaction, the district court made fact findings at sentencing as to the drug quantities.  Nguyen argues that if we subtract the pill quantity *not* found by the jury (which, because the jury was never presented the question, amounts to the entire amount of pills yielding his sentencing range), he would face an offense level of only 12, resulting in a Guideline range of 10 to 16 months.  Instead, Nguyen was sentenced to the bottom of the mandatory range for offense level 34, or 151 months.

Since the district court based Nguyen's sentence on judge-found facts, it committed constitutional *Booker* error.  It also committed non-constitutional *Booker* error by sentencing him under the mandatory Guidelines.  Nguyen concedes that because he did not object in the district court to the drug quantity used to compute his base offense level and did not challenge the constitutionality

---

[1] Nguyen was not convicted on the third count and it was dismissed. Excluding the pills attributed to the third transaction does not change the base offense level, which begins at 300 grams.

of the sentencing guidelines, we must review for plain error. *See United States v. Olano*, 507 U.S. 725, 732 (1993).

To establish plain error, Nguyen must demonstrate that the district court (1) committed error, (2) that the error was plain, and (3) that the plain error affected his substantial rights. *United States v. Cotton*, 535 U.S. 625, 631 (2002). If all these conditions are met, we may exercise our discretion to correct it if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Cotton*, 535 U.S. at 631-32. "We conduct this analysis 'less rigidly when reviewing a potential constitutional error.'" *United States v. Dazey*, 403 F.3d 1147, 1174 (quoting *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001)).

With respect to the first two prongs, there is no question the sentencing court committed actual errors, both constitutional and non-constitutional, and that the errors were plain and obvious. The district court sentenced Nguyen based on facts not "admitted by the defendant or proved to a jury beyond a reasonable doubt," *Booker*, 125 S. Ct. at 756, and operated under the erroneous assumption that the Guidelines were mandatory. As our case law explains, an error is plain "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal." *Dazey*, 403 F.3d at 1174. The district court sentenced

Nguyen in accordance with law that was well-settled at the time, which we now know was in error.

The third prong analysis is more complex. Under our precedent, a defendant must demonstrate "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Gonzalez-Huerta,* 403 F.3d at 733. *See also Dazey,* 403 F.3d at 1175. That showing can be made in a variety of ways, including, for example, (1) the defendant may be able to demonstrate a reasonable probability that a jury applying a reasonable doubt standard would not have found the same facts that the judge found by a preponderance of the evidence, *see Dazey*, 403 F.3d at 1175; or (2) the defendant may be able to show a reasonable probability that consideration of the sentencing factors in § 3553(a) would have led the district court to impose a sentence outside the applicable Guidelines range, *see United States v. Trujillo-Terrazas*, 405 F.3d 814 (10th Cir. 2005).

With respect to the first of these considerations, Nguyen has not shown a reasonable probability that the factual determination of drug quantities might have been different if referred to a jury applying a reasonable doubt standard. A review of the record shows that the quantities at issue in the case were not seriously in doubt. The indictment specifically alleged that Nguyen twice trafficked in over 2500 tablets for a total of 5092 tablets (60 mg each, for a total

-25-

of 300 grams of pseudoephedrine). Officer Carroll provided testimony at trial as to the exact number of pills he purchased; Nguyen offered nothing in rebuttal. Nor did Nguyen object at sentencing to the PSR's drug quantity calculation. Thus, although the jury did not determine an exact drug quantity, Nguyen has failed to show there is reasonable probability a jury would have found a lesser amount. *See Dazey*, 403 F.3d at 1175 ("[A defendant can meet his burden if he] shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence.").

Yet another way exists to make the required showing under the third prong: By examining the court's consideration of the sentencing factors under § 3553 as applied to a particular defendant. Our cases have looked to several circumstances, including (a) whether there is a "disconnect" between the § 3553(a) factors and the sentence, *see Clifton*, 406 F.3d 1173, 1181, or (b) where the district court expressed dissatisfaction with the mandatory Guidelines. *See Gonzalez-Huerta*, 403 F.3d at 734 (stating "the sentencing judge expressed unhappiness on the record with the mandatory nature of the Guidelines as it relates to the sentence in that particular case").

Applying these considerations here, no disconnect exists between the § 3553 factors and the sentence. Nguyen's sentence is in line with what the

Guidelines call for based on his personal characteristics and those of similarly situated defendants. *United States* v. *Dalton*, --- F.3d ----, 2005 WL 1283850 at *5 (10th Cir., June 1, 2005).

The second consideration, the court's "dissatisfaction with the mandatory Guidelines," presents a subtler question. We examine this consideration under both the third and fourth prongs of plain error review. *Dazey*, 403 F.3d at 1175. While some evidence of statements by the sentencing judge about the application of the mandatory Guidelines exists in this case—even assuming the comments satisfied the third prong, which we need not reach here—we conclude they do not support our requirements to notice plain error under the fourth prong.

At Nguyen's sentencing, the court stated:

> The counsel are aware, but I doubt that Mr. Nguyen's family would be fully aware, that this case is governed by the federal guideline sentence system, under which *I have very little discretion with respect to the sentence of imprisonment . . .* there has been no objection to the presentence report presented in the case [and] the calculations are entirely correct, resulting in a sentence [which is] at a very high level for imprisonment. And I'm sure there are many judges whose opinion it would be that the level is unrealistically high. But we don't make up the law here, we have to apply it as it is. *[T]he only leniency or mercy that I could impose would be to impose a sentence at the very bottom of the guideline range, which I will do.*

ROA at 223. While this statement suggests the court had some sympathy for the defendant, a general expression of "leniency" or "mercy" alone is insufficient to

satisfy plain error under the fourth prong. As we recently discussed in the context of plain error review:

> Even if a defendant can demonstrate that the district court felt particular sympathy for him, and might impose a lesser sentence on remand, failing to correct this type of plain error would not impugn the fairness, integrity, and public reputation of judicial proceedings. Indeed, a remand might do quite the opposite because another defendant convicted of an identical crime under identical circumstances could receive a different sentence from a less sympathetic judge.

*United States v. Trujillo-Terrazas*, 405 F.3d 814, 821 (10th Cir. 2005) (finding plain error in case where relatively minor prior conviction added significantly to the sentence and court expressed dissatisfaction with mandatory guidelines).

The judge's generalized comments in this case do not rise to the level of particularity we have previously recognized as satisfying the fourth prong. In another recent case, for example, we remanded for resentencing where the sentencing court explicitly stated, "if I had more discretion, I would impose a lower sentence." *United States v. Clifton*, 406 F.3d 1175, 1183 (10th Cir. 2005). The district court's statement in this case, in contrast, is more an acknowledgment of his desire to exercise discretion within a Guideline range generally appropriate for the crime committed; it is not a clear expression of a desire or willingness to depart downward. Nor, as we said, is the statement linked to any § 3553(a) factor to indicate the court would exercise additional discretion if it could to impose a lower sentence.

In the end, for us to notice plain error a defendant must demonstrate the *Booker* error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Gonzalez-Huerta*, 403 F.3d at 734. "Our analysis under this fourth prong when an error is non-constitutional is not flippant or perfunctory; the standard is formidable, as we will only exercise our discretion when an error is 'particularly egregious' and the failure to remand for correction would produce a 'miscarriage of justice.'" *Trujillo-Terrazas*, 405 F.3d at 820 (quoting *Gonzalez-Huerta*, 403 F.3d at 736). This demanding standard is not met here.

In light of the undisputed drug quantity determination, the generalized nature of the judge's comments at sentencing, and the application of a Guidelines range that is typical for the crime of conviction, we are unable to notice plain error in this case.

### III. CONCLUSION

For the aforementioned reasons, we AFFIRM the conviction and sentence.