**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DOUGLAS M. MURPHY,

Defendant-Appellant.

No. 04-1480
(D.C. Nos. 04-N-241 and
99-CR-418-N)
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **LUCERO** , **ANDERSON** , and **BRORBY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Hoping to ameliorate the result of a conviction by a federal jury on one

count of conspiracy, five counts of mail fraud, two counts of securities fraud, and

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

one count of money laundering, a verdict affirmed by this court on direct appeal, *see United States v. Aptt*, 354 F.3d 1269 (10th Cir. 2004), petitioner Douglas Murphy filed this 28 U.S.C. § 2255 motion to set aside his convictions alleging that he had been the victim of ineffective assistance of counsel and was prejudiced thereby. The district court held a hearing on the § 2255 motion and denied both the requested relief and a certificate of appealability. Mr. Murphy appeals the denial of his § 2255 motion. This court has previously granted a certificate of appealability, and we now affirm.

Mr. Murphy, his brother, Mr. Bruce Murphy, and Mr. John Aptt were all involved in Financial Instruments Group, a Ponzi scheme which ultimately collapsed in the late 1990's costing losses to investors in excess of eleven million dollars. Mr. Aptt and Mr. Bruce Murphy pleaded guilty to counts of mail fraud and money laundering and were sentenced to nine years and ten years in prison, respectively. Mr. Douglas Murphy went to trial and was found guilty. He was sentenced to just over eight years imprisonment.

In his § 2255 motion, Mr. Murphy asserted that it was ineffective assistance of counsel for his trial attorney to stipulate to the admission of all the government's exhibits, particularly to exhibit 352, a memo addressed to "John" from "Doug and Bruce" in which the authors outlined a business plan for the company. The plan included forming a new corporation in order to "clean up past

securities compliance sins, and gain relief from the onerous debt repayment structure." Aplt. App. Vol. I at 134. The new corporation additionally would raise new capital and would "go back in the market under claimed exemptions, with enough disclosure to keep regulators at bay." *Id.* at 135. The memo cautioned that "[s]ecurities compliance comes at a very high cost, both in terms of dollars and in terms of its effect on the ability of Financial Instruments to continue to conduct business. Securities compliance also means full disclosure of all financial details, past, present and future, and full disclosure of any SEC investigations or inquiries." *Id.* at 134. The memo laid out a "roadmap," explaining how the business could "avoid paying the high price for past errors, AND show[] the way to capitalize on the positives." *Id.*

The exhibit was used by both sides during trial and in their closing arguments, although the government used it more extensively, referring to it as the "smoking gun" *id.* Vol. III at 853, and as direct evidence of Mr. Murphy's criminal intent, *id.* at 813, 819. The defense urged the jury to view exhibit 352 as Mr. Murphy's attempt to convince Mr. John Aptt to make "full and fair disclosure" and "to fully comply with SEC regulations and all securities laws. . . . [Mr. Murphy] wanted John to get the ship floating right. He wanted him to do the right thing." *Id.* at 843. Because Mr. Aptt refused to act on this advice, the defense argued, Mr. Aptt and not Mr. Murphy was the culprit. *Id.*

In the district court and on appeal, Mr. Murphy argues that his trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1988), for allowing exhibit 352 to come into evidence, and he offers alternative theories for how it could have been kept from the jury. He also argues that he was prejudiced by trial counsel's ineffective performance.

"Ineffective assistance under *Strickland* is deficient performance by counsel resulting in prejudice, with performance being measured against an objective standard of reasonableness under prevailing professional norms." *Rompilla v. Beard*, 125 S. Ct. 2456, 2464 (2005) (citations and internal quotation marks omitted). In order to prevail on his claim of ineffective assistance, Mr. Murphy must show that his attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Strickland*, 466 U.S. at 687, and that (2) counsel's performance prejudiced him in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. When reviewing an ineffective assistance of counsel claim, we must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

Guided by *Strickland,* we proceed under the strong "presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance; that is, . . . the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Aptt*, 354 F.3d at 1284 (quoting *Strickland*, 466 U.S. at 689). Strategic decisions of trial counsel are ordinarily shielded from charges of ineffectiveness. "'Tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.'" *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995) (quoting *United States v. Ortiz Oliveras,* 717 F.2d 1, 3, (1st Cir. 1983). "For counsel's advice to rise to the level of constitutional ineffectiveness, the decision to [stipulate to the admission of an exhibit] must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy." *Hatch*, 58 F.3d at 1459 (quotation omitted).

This deference to an attorney's strategic trial decision will stand unless the decision itself was objectively unreasonable. *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002). But "[w]here it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *United*

*States v. Nguyen* , 413 F.3d 1170, 1181 (10th Cir. 2005) (citing *Bullock* , 297 F.3d at 1044).

"[T]he mere incantation of 'strategy' [however] does not insulate attorney behavior from review." *Bullock* , 297 F.3d at 1048 (internal quotation marks and citation omitted). "[T]he ultimate inquiry when deciding whether an attorney performed in a constitutionally deficient manner is not whether the counsel's actions can be considered strategic, but whether, under all the circumstances, counsel's actions may be considered objectively reasonable." *Id.* at 1041. "Whether a petitioner's claim satisfies *Strickland's* two-part test is a mixed question of law and fact we review de novo." *Id.* at 1044.

At the § 2255 hearing, at which trial counsel testified, Mr. Murphy argued that trial counsel's decision to stipulate to the admission of exhibit 352 was not reasonable and therefore not shielded from post conviction review; that there would have been a good objection to the exhibit, either on the basis of hearsay or authenticity; and that the government could not have laid more foundation for the exhibit to overcome a successful objection. Aplt. App. Vol. III at 1023. Mr. Murphy also argued in his brief to the district court that he had been prejudiced by trial counsel's representation.

The district court disagreed that trial counsel had been ineffective, finding that it was reasonable strategy to conclude that admission of the exhibit would aid

in Mr. Murphy's defense by getting a seemingly helpful document before the jury without having to call Mr. Murphy as a witness. *Id.* at 1029. Elaborating, the district court concluded that the problem with the exhibit was not a hearsay problem but one of authenticity and that the government could have called Mr. Bruce Murphy or Mr. John Aptt to authenticate the document or have otherwise authenticated it. *Id.* at 1030-33. As for the prejudice prong of an ineffective assistance claim, the district court concluded that, because there was more than sufficient other evidence of Mr. Murphy's guilt aside from the exhibit, he was not prejudiced by its admission. *Id.* at 1036-37.

At the § 2255 hearing, trial counsel testified that he had considered all of the potential exhibits and "how . . . the trial would play out" and that he and his client "really wanted [exhibit 352] in." *Id.* Vol. III at 957. In response to a question from the court as to why the defense wanted exhibit 352 in evidence, the attorney explained that he and Mr. Murphy felt that there were positive aspects to the exhibit and that their trial strategy was a distancing strategy. *Id.* Counsel testified:

> In other words, John Aptt, this was his deal, and he had masterminded this whole deal. And what I wanted to do at trial, and Doug and I had agreed upon that, is to distance him away from John Aptt, and also FIG and Global Instruments Group . . . .
>
> But there were positives in 352, because it showed that there was an attempt for Doug to want John Aptt to make sure everything

was complied with, including SEC regulations, including honesty aspects. And so there were positive aspects that we viewed in 352.

*Id*. at 957-58.

When asked whether he had considered objecting to the foundation of the exhibit and its authenticity and forcing the government to its proof, counsel recalled that he had discussed those issues with his client, but that "there were certain things we wanted definitely in front of the jury, and 352 was really one of them." *Id.* at 995. At one point during the hearing, the court even commented that he understood counsel to have considered ways to block the exhibit's admission but that "[h]e just considered it very quickly, because it was primarily on his mind that he wanted it in. And if you want it in, you don't spend a lot of time researching ways to keep it out." *Id.* at 1016.

Thus, although both Mr. Murphy and his counsel were aware of the negatives that exhibit 352 would reveal, defense strategy was to get the exhibit before the jury without having Mr. Murphy testify. *Id.* at 1004.

Despite Mr. Murphy's strong arguments to the contrary, we are unable to conclude that trial counsel's representation in this regard was ineffective. On direct appeal, this court noted that any question of counsel's ineffectiveness was more properly brought in a collateral proceeding. *Aptt*, 354 F.3d at 1284. Specifically the panel noted, "the record [on appeal] does not show whether counsel for Mr. Murphy had carefully reviewed the stipulated exhibits, nor does it

show whether he hoped to gain any strategic advantages by making the stipulation." *Id.* at 1284-85. Now, thanks to the hearing held by the district court, we can answer confidently that counsel carefully reviewed exhibit 352 and concluded, in accord with Mr. Murphy, that they could gain a strategic advantage by getting the exhibit before the jury without having to call Mr. Murphy to authenticate it. Counsel's performance was thus not only an adequately informed strategic choice, it was, under all the circumstances, objectively reasonable. *See Bullock* , 297 F.3d at 1047.

Mr. Murphy's arguments theorizing how he could have kept exhibit 352 away from the jury are beside the point. The strategy was to get the exhibit in, a tactic that, while not as successful as Mr. Murphy would have wished, was not unreasonable. The fact that the strategy was unsuccessful, perhaps even unwise, is not a basis upon which to find ineffective assistance of counsel. *Hatch* , 58 F.3d at 1459.

In addition to his arguments concerning the admission of exhibit 352, Mr. Murphy points to what he considers additional instances of counsel's ineffectiveness. While those examples may or may not have been objectively reasonable performance by trial counsel, Mr. Murphy has made no showing that the alleged errors prejudiced him. *See Rompilla* , 125 S. Ct. at 2476 (Kennedy, J., dissenting) (noting that the defendant has the burden of proving prejudice); *see*

*also Strickland* , 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

The judgment of the district court is AFFIRMED.

Entered for the Court


Stephen H. Anderson
Circuit Judge