FILED
United States Court of Appeals
Tenth Circuit

December 19, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

ROBERT LOUIS ROSS, SR.,

Petitioner-Appellant,

v.

DAVID PARKER,

Respondent-Appellee.

No. 08-6166
(W. D. Okla.)
(D.C. No. 5:08-CV-00033-C)

ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

Before **TACHA**, **KELLY** and **McCONNELL**, Circuit Judges.

Robert Louis Ross, a state prisoner proceeding *pro se*, seeks a certificate of appealability (COA) that would allow him to appeal from the district court's order denying his habeas corpus petition under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(1)(A). Because we conclude that Mr. Ross has failed to make "a substantial showing of the denial of a constitutional right," we deny his request for a COA, and dismiss the appeal. 28 U.S.C. § 2253(c)(2).

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.

# I. Background

Mr. Ross was charged with delivering cocaine base to a confidential informant. He had four prior felony convictions, including three for unlawful delivery of a controlled substance. He was convicted by a jury, based in large part on testimony from a confidential informant who purchased drugs from Mr. Ross. The jury also saw a videotape of the drug purchase and heard the testimony of a criminalist who stated that the substance Ms. Schultz purchased was .15 grams of cocaine base.

At sentencing, Mr. Ross stipulated that he had three prior felony convictions for unlawful delivery of a controlled substance. The jury found that Mr. Ross committed the offense after three prior felony convictions and recommended a sentence of eighty years' imprisonment and a $20,000 fine. On November 25, 2003, Mr. Ross received a sentence of eighty years' imprisonment with no fine.

Mr. Ross appealed his conviction, arguing both that prosecutorial misconduct during closing argument denied him a fair trial and that the trial court's failure to instruct the jury on entrapment resulted in reversible error. The Oklahoma Court of Criminal Appeals ("OCCA") upheld the conviction.

Subsequently, Mr. Ross filed an application for post-conviction relief in the District Court of Custer County. His application included five grounds for relief: (1) the OCCA violated his rights under state and federal law by allowing a judge, who was later forced to resign for misconduct, to hear his appeal while the judge

was being investigated by the Oklahoma Attorney General; (2) the prosecutor made prejudicial remarks during closing argument, which denied him a fair trial; (3) the court failed to give an entrapment jury instruction; (4) his counsel provided ineffective assistance because he did not pursue an entrapment defense or challenge the racial composition of the jury; and (5) there was purposeful racial discrimination during jury selection in violation of his rights under *Batson v. Kentucky*, 476 U.S. 79 (1986).

On May 11, 2007, the state court entered findings and denied Mr. Ross's application for post-conviction relief. The court held that Mr. Ross had already raised grounds two, three, and four on direct appeal, and those claims were "therefore denied."[1] The OCCA affirmed on August 13, 2007. Mr. Ross raises all five grounds for relief again in this appeal.

## II. Discussion

The denial of a motion for relief under 28 U.S.C. § 2254 may be appealed only if the district court or this Court first issues a COA. 28 U.S.C. § 2253(c)(1)(A). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make such a showing, a petitioner must demonstrate that "reasonable jurists

---

[1]This statement appears inaccurate. On direct appeal, only grounds two and three were actually raised by Mr. Ross. The fourth ground, whether Mr. Ross's counsel provided ineffective assistance in failing to pursue an entrapment defense, was neither raised by Mr. Ross nor addressed by the OCCA on direct appeal.

could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citations omitted). Where a state court has already adjudicated a claim on the merits, an application for writ of habeas corpus shall not be granted with respect to that claim unless the state's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Three of the five claims raised by Mr. Ross have already been adjudicated by Oklahoma courts. On direct appeal, the OCCA adjudicated Mr. Ross's claims involving prosecutorial misconduct during closing argument and alleged judicial error in failing to issue a jury instruction on entrapment, grounds two and three presented on appeal. The Custer County District Court, in the post-conviction relief proceedings, adjudicated the judge qualification claim, ground one on appeal. Thus, habeas relief can only be granted on these three claims if the state's decision was contrary to, or involved an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1). Mr. Ross has the burden of showing that the state court applied Supreme Court precedent to the facts in an

"objectively unreasonable manner." *See Brown v. Payton*, 544 U.S. 133, 141

(2005); *see also Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (*per curiam*).

## A. Appellate Court Judge's Bias

Mr. Ross argues that the OCCA violated the federal and Oklahoma

constitutions by allowing one of its judges, former OCCA Judge Steven E. Lile, to

consider his direct appeal while the Oklahoma Attorney General was investigating

Judge Lile. Shortly after a decision in Mr. Ross's direct appeal was entered, Judge

Lile resigned from his judgeship. The OCCA rejected this argument in Mr. Ross's

post-conviction appeal, finding that the claim of judicial bias was not supported by

the record.

Judge Lile resigned his office three weeks after the decision in Mr. Ross's

direct appeal was issued. All four judges on the panel agreed that Mr. Ross's

conviction should be affirmed. Three agreed that his sentence should also be

affirmed, though one thought it should be modified. Thus, Mr. Ross's conviction

would have been affirmed even if another judge had been substituted in Judge

Lile's place. Mr. Ross has not indicated how the circumstances leading to Judge

Lile's resignation prejudiced Mr. Ross in any way. He says only that Judge Lile

should not have heard the case "[b]ecause the case deals with drugs, which the

judge's suspension had something to do with," and that Judge Lile's secretary and

her son may have had drug problems. These allegations raise only the faintest

-5-

appearance of bias.  Because it is Mr. Ross's burden to overcome the presumption

of impartiality, *Bracy v. Gramley*, 520 U.S. 899, 909 (1997); *Fero v. Kerby*, 39

F.3d 1462, 1479 (10th Cir. 1994), his failure to offer any evidence of actual bias is

fatal to his claim that the state court applied established federal law unreasonably.

## B. Prosecutorial Misconduct

Mr. Ross argued on direct appeal that the prosecutor engaged in misconduct

that violated his rights to due process and a fair trial.  In his direct appeal, Mr.

Ross pointed to the following statements, which the prosecutor made during

argument at the end of the first stage of Mr. Ross's trial:

> I also ask that you ask—you consider the elements.  Look at the location.  The testimony from Ms. Schultz, it's near businesses.  It's near schools.  It's near churches.  It's in the middle of the day.  It's not in a secluded neighborhood where all drug transactions take place, [but] it's out there where the public goes in the middle of the day.
>
> It's time to show Mr. Ross that the public is not going to tolerate that anymore.  Drugs affect families.  They affect jobs.  And I think now it's time to send a message, and I ask that you find Mr. Robert Ross, Sr., the defendant, guilty.  Thank you.

Supp. Report 12.  He also argued that the following statements made by the

prosecutor during closing arguments in the sentencing stage of Mr. Ross's trial

were improper:

> 28 years he's received and he still has not learned his lesson. He still—he gets out.  I believe that 1999—or 1997 case he was sentenced to 10 years imprisonment—1998, 10 years.  He got out a short while later.  This is only 2003 . . . .  I submit to you that 28 years total is not enough.  It's not enough to send the message that the

State or the people want to send. We want to get the drug dealers off the street. Must I remind you it happened in broad daylight at a quick shop near a church, near a school, near businesses. And I submit to you that we need to send a message to Robert Ross, Sr. and others who are committing this crime. And I submit to you I ask for 80 years. Thank you.

*Id.* Mr. Ross argued on direct appeal that these statements were made to incite the passions and prejudices of the jury, injected issues besides guilt and innocence, and improperly raised the issue of parole. However, his counsel failed to object to any of these arguments at trial. Therefore, the OCCA reviewed this claim only for plain error. *McBride v. United States*, 409 F.2d 1046, 1048 (10th Cir. 1969). Plain error "occurs when there is (1) error, (2) that is plain, (3) which affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Lopez-Flores*, 444 F.3d 1218, 1222 (10th Cir. 2006) (internal citation omitted). The OCCA rejected Mr. Ross's prosecutorial misconduct claim without explanation.

"Habeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair." *Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-48 (1974)). In making this determination, we consider "the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Jackson v. Shanks*, 143 F.3d 1313, 1322 (10th Cir. 1998) (citing *Donnelly*, 416 U.S. at 643). First, we determine if the prosecutor

acted improperly. *See United States v. Ivy*, 83 F.3d 1266, 1288 (10th Cir. 1996). If so, then we determine whether the misconduct warrants reversal. *Id.*

Here, the prosecutor asked the jury to help solve a problem in society by convicting Mr. Ross. This is improper. *See United States v. Taylor*, 514 F.3d 1092, 1104 (10th Cir. 2008) ("[A] prosecutor's appeal to the jury to assist in solving a pressing social problem by convicting [the] Defendant was improper."). Whether the misconduct requires reversal depends on whether "there is reason to believe that it influenced the jury's verdict." *Ivy*, 83 F.3d at 1288 (internal quotations omitted). In making that determination, we "consider the trial as a whole, including 'the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case.'" *Id.* (quoting *United States v. Martinez-Nava*, 838 F.2d 411, 416 (10th Cir. 1988)). Because the defendant did not lodge a timely objection at trial, there were no admonitions to counsel or curative instructions.

We conclude that the OCCA did not unreasonably apply Supreme Court precedent when it determined that the prosecutor's closing argument did not warrant reversal under a plain error standard. "[A]n improper appeal to societal alarm typically does not amount to a denial of due process." *Jones v. Gibson*, 206 F.3d 946, 959 (10th Cir. 2000). Here, the overwhelming evidence presented at Mr. Ross's trial established his guilt. Under *Donnelly* and *Cummings*, misconduct warrants reversal only if the action was so egregious that it rendered the entire

-8-

trial unfair. *See Donnelly*, 416 U.S. at 642-48; *Cummings*, 161 F.3d at 618. Considering the other inculpatory evidence presented to the jury, the lack of an objection, and the deference AEDPA affords to state court decisions, no reasonable jurist could conclude that the prosecutorial misconduct in this case warrants grant of habeas relief.

The OCCA, likewise, was not unreasonable in concluding that the prosecutor's misconduct during the sentencing phase of the proceedings did not warrant reversal. Mr. Ross argues that his eighty-year sentence is "clearly excessive" for the drug offense, and that it was the prosecutor's improper argument during this phase of the proceedings that "undoubtedly influenced the jury to recommend such a severe sentence." We disagree. Mr. Ross had stipulated to evidence of his three prior convictions for illegal drug distribution. With these facts before it, the jury imposed a sentence within the range of sentencing allowed by Oklahoma law. These circumstances do not establish that the jury would have reached a different decision had it not heard the prosecutor's appeal to societal alarm. The OCCA's decision, therefore, was not contrary to or an unreasonable application of established law.

**C. Entrapment Jury Instruction**

Mr. Ross argues that the trial court committed reversible error when it refused to give the proposed jury instructions on entrapment that Mr. Ross's

counsel had submitted.  The OCCA rejected this claim with no explanation other than a cite to one of its prior decisions, *Cooper v. State*, 810 P.2d 1303 (Okla. Crim. App. 1991).  In that case, the OCCA held "it is not entrapment for police to simply furnish a defendant with an opportunity to commit a crime."  *Id.* at 1305.

Generally, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."  *Mathews v. United States*, 485 U.S. 58, 63 (1988).  An entrapment defense requires a showing of "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct."  *Id.*

Mr. Ross argues that he is entitled to the jury instruction based on Ms. Schultz's testimony at trial that she had told Mr. Ross she "needed" the cocaine she was going to purchase from him and had contacted Mr. Ross five to ten times to arrange a purchase.  This testimony, however, is not sufficient for a reasonable jury to find entrapment.  Testimony that "a government agent solicited, requested, or approached the defendant to engage in a criminal conduct, standing alone, is insufficient to constitute inducement."  *United States v. Nguyen*, 413 F.3d 1170, 1179 (10th Cir. 2005), *cert. denied*, 546 U.S. 1125 (2006).  Accordingly, the jury would not have found entrapment even if the instruction had been given.

Moreover, the Supreme Court has recognized that "it is very unlikely that [a] defendant will be able to prove entrapment without testifying."  *Mathews*, 485

U.S. at 65 (internal citations omitted). Here, Mr. Ross did not testify, nor did his counsel present any other evidence to suggest Mr. Ross was an otherwise innocent person who was not predisposed to engaging in this type of criminal activity. Thus, the decision to not issue an entrapment instruction did not deny Mr. Ross of a fair trial. The OCCA's decision to affirm was, therefore, not an unreasonable application of Supreme Court precedent, nor did the decision rest on an unreasonable determination of the facts presented at Mr. Ross's trial.

## D. Ineffective Assistance

Though he did not raise this issue in his direct appeal, Mr. Ross now argues that he was denied effective assistance of counsel because his trial counsel did not raise an entrapment defense and did not challenge the racial composition of the jury. The OCCA apparently determined that review of this Sixth Amendment claim was barred either by *res judicata* or the appellate court's procedural bar rule, but it is unclear which it thought applied. The OCCA's decision lacks a "'plain statement' that its decision rests upon adequate and independent state grounds." *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (quoting *Michigan v. Long*, 463 U.S. 1032, 1042 (1983)). Accordingly, we evaluate the merits of Mr. Ross's ineffective assistance of counsel claim. *See id.* at 263 (holding that a federal court on habeas review may evaluate the merits of a claim where the last state court rendering a judgment on that claim did not "clearly and expressly" state that the judgment rested solely on independent state grounds).

-11-

"To prove ineffective assistance of counsel . . . , a defendant must show, by a preponderance of the evidence, that (1) counsel's performance fell below an objective standard of reasonableness, and (2) prejudice, such that there is a reasonable probability that but for counsel's errors, the outcome of the trial would have been different." *Young v. Sirmons*, 486 F.3d 655, 674-75 (10th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 692-93 (1984)).  There is "a strong presumption that trial counsel acted within the "wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689.

Mr. Ross first argues that his counsel's failure to pursue an entrapment defense amounted to ineffective assistance.  We disagree.  In light of the inculpatory evidence presented at trial, it is unlikely that the trial's outcome would have been different had Mr. Ross's counsel pursued an entrapment defense. Moreover, entrapment, as previously noted, requires a showing that a defendant was not predisposed to engage in unlawful acts. *Mathews*, 485 U.S. at 63. Pursuing such a defense would have opened up the door for more negative evidence about Mr. Ross's past drug addictions and criminal history, decreasing the likelihood of a favorable verdict.  Considering these circumstances, it was reasonable for Mr. Ross's counsel to not pursue an entrapment defense.

Next, Mr. Ross argues that his counsel provided ineffective assistance by not challenging the racial composition of the jury.  Mr. Ross's counsel objected to the government's use of a peremptory challenge once during voir dire.  He

requested "a race neutral reason why [a particular] juror was excused." Tr. 100.

The government withdrew its challenge, and the juror remained on the jury panel.

Tr. 101. Mr. Ross's counsel made no further objections about the racial composition of the jury.

The Equal Protection Clause is violated where a defendant is tried "before a jury from which members of his or her race have been excluded by the State's purposeful conduct." *Powers v. Ohio*, 499 U.S. 400, 404 (1991). While a defendant does not have the right to a jury composed of people of his race, he does have the right to have his jury chosen by nondiscriminatory criteria. *Id.* (citing *Strauder v. West Virginia*, 100 U.S. 303, 305 (1879)). A defendant must establish a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose" in the selection of jurors. *Batson v. Kentucky*, 476 U.S. 79, 93-94 (1986).

Mr. Ross argues that he was "purposefully denied the right to have a member of his own race or any other race other than White" on his jury. This is not enough, however, to establish a *Batson* claim. The Supreme Court has held that proportional racial representation on petit juries is an impossibility not required by the Sixth Amendment. *See Batson*, 476 U.S. at 86, n.6. The trial record does not reveal any facts suggesting a discriminatory purpose. Accordingly, Mr. Ross's counsel did not act outside the range of reasonable professional assistance required under *Strickland*. 466 U.S. at 689. Thus, Mr.

Ross's claims for ineffective assistance of counsel as well as his *Batson* claim are denied.

### III. Conclusion

For the foregoing reasons, we **DENY** Mr. Ross's request for a COA and **DISMISS** this appeal.

Petitioner's motion to proceed *in forma pauperis* is also **DENIED**.

Entered for the Court,

Michael W. McConnell
Circuit Judge