**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 31, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

PEDRO QUIJADA,

    Defendant-Appellant.

No. 04-2201
(D. N.M.)
(D.Ct. No. CR-04-516 JB)

---

### ORDER AND JUDGMENT[*]

---

Before **EBEL**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HENRY**, Circuit Judge.

---

Margaret A. Katze, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Laura Fashing, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant Pedro Quijada pled guilty to one count of being found in the United States after deportation following an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a)(1), (2) and (b)(2). He appeals the enhancement of his sentence based on his prior conviction for assault and battery, which he contends the district court improperly characterized as a crime of violence, in violation of the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm.

## I. Background

Prior to Mr. Quijada's plea to the federal charge against him, the district court granted his motion for a "pre-plea" presentence report for the purpose of determining Mr. Quijada's prior criminal record and the possible sentence he might face. A federal probation officer prepared the presentence report, in which he recommended a sixteen-level enhancement under United States Sentencing Commission, *Guidelines Manual* (U.S.S.G.) § 2L1.2(b)(1)(A), based on Mr. Quijada's prior conviction for a crime of violence. Specifically, the presentence report stated that on July 1, 1998, Mr. Quijada was convicted in Massachusetts of two counts of assault and battery after his girlfriend, Patricia, reported he grabbed her by the throat and pushed her into a wall and elbowed her twelve-year-old

daughter, Alissa, hitting her in the upper part of her body. (Hereinafter "prior convictions.") The criminal history portion of the presentence report also included other prior convictions, including a 1993 assault and battery with a dangerous weapon conviction.

After completion of the presentence report, Mr. Quijada entered into a plea agreement admitting the government's allegations, including that he had been convicted in 1998 in Massachusetts for two counts of assault and battery and that those convictions were for aggravated felonies. Mr. Quijada then pled guilty to one count of being found in the United States after deportation following an aggravated felony conviction. The probation officer revised the presentence report to reflect both Mr. Quijada's guilty plea and the government's recommendation he receive a three-level reduction for acceptance of responsibility. The probation officer then calculated Mr. Quijada's total offense level at 21 and his criminal history category at III, for a resulting Guidelines range of forty-six to fifty-seven months imprisonment. Other than an unsuccessful request for a downward departure, Mr. Quijada did not object to the factual allegations or Guidelines calculations in either the pre-plea or the revised presentence report. In opposing Mr. Quijada's request for a downward departure, the government referenced, and ultimately submitted, the 1998 Massachusetts

complaint against Mr. Quijada and the judgment of conviction, which showed Mr. Quijada was charged with and pled guilty to two offenses entitled "Assault and Battery c. 265 s. 13A." The complaint also stated he "did assault and beat Patricia Evans, in violation of [General Laws] c. 265, s. 13A," and "did assault and beat Alissa Evans, in violation of [General Laws] c. 265, s. 13A."

Prior to sentencing, the United States Supreme Court decided *Blakely*. At the sentencing hearing, the district court asked Mr. Quijada and his counsel if they had any factual objections, to which they responded, "no." In addition, Mr. Quijada conceded that an eight-level enhancement under U.S.S.G. § 2L1.2(b)(1)(C) was warranted, based on his admission at the plea hearing to the aggravated felony status of the 1998 Massachusetts assault and battery convictions.[1] However, he argued an additional eight-level enhancement under § 2L1.2(b)(1)(A) would violate *Blakely* because a judge, not a jury, was determining that the assault and battery convictions constituted "crimes of violence." The district court agreed, thereby reducing his offense level from 21

---

[1] Prior to November 1, 2001, the Guidelines applied a sixteen-level enhancement to all aggravated felonies. *See United States v. Torres-Ruiz*, 387 F.3d 1179, 1181 (10th Cir. 2004). As amended, § 2L1.2 provides a sliding scale of enhancements so that enhancements for aggravated felonies are eight levels, while "the 16-level enhancement is reserved for a more narrow and serious category of crimes, referred to as 'crimes of violence.'" *Id.* at 1182.

to 13, for a total Guidelines sentencing range of eighteen to twenty-four months imprisonment. The district court then sentenced him to twenty-four months imprisonment and three years unsupervised release. However, in so doing, the district court announced two alternative sentences, stating that if the Guidelines were found unconstitutional in their entirety, on remand it would impose a sentence of forty-six months imprisonment, and if it was incorrect in its application of *Blakely*, it would determine that the applicable Guidelines range was forty-six to fifty-seven months and impose a forty-six-month sentence.

The government filed a timely motion to correct the sentence under Federal Rule of Criminal Procedure 35(a) based on this court's decision in *United States v. Cooper*, which was entered on the same day as Mr. Quijada's sentencing hearing and which generally indicated that facts of a prior conviction used to increase a sentence need not be submitted to a jury because prior convictions are excepted from the rule announced in *Blakely*. 375 F.3d 1041, 1053 n.3 (10th Cir.), *cert. denied*, 125 S. Ct. 634 (2004). After Mr. Quijada opposed the government's motion, the district court held a hearing and determined the government's motion was proper under Rule 35 because it represented a legal question regarding a sentencing error. Based on our holding in *Cooper*, the unobjected-to facts in the presentence report, and the documents relating to Mr.

Quijada's July 1998 convictions, it made a judicial finding that "Mr. Quijada committed a crime of violence for which a 16-level enhancement is warranted." It then reinstated the previously calculated Guidelines range of forty-six to fifty-seven months imprisonment and sentenced him to forty-six, rather than twenty-four, months in prison. It also explained it would, on remand, reinstate the alternative sentence it previously announced.

On appeal, Mr. Quijada continues to argue a jury, and not the district court, should have determined whether his 1998 convictions were crimes of violence. For the first time on appeal, he also asserts his prior 1998 convictions for assault and battery are not crimes of violence because an offense committed under Massachusetts General Laws, chapter 265, § 13A includes offenses, as defined under common law, as those "committed by an intentional and unjustified use of force upon another person, however slight." In support of this new claim, Mr. Quijada contends the district court improperly characterized the two 1998 convictions as crimes of violence without considering the relevant Massachusetts assault and battery statute and, instead, relying on the underlying facts cited in the presentence report. He argues the district court should have strictly applied the requisite categorical approach and looked only at the statutory elements, which demonstrate a conviction for assault and battery may include a nonviolent, slight

touch, which he contends cannot be characterized as a crime of violence under U.S.S.G. § 2L1.2(b)(1). In sum, his argument centers on the degree or amount of force necessary to constitute a crime of violence, which he contends must be violent force. While Mr. Quijada admits he did not raise this issue before the district court, he nevertheless argues we should disregard analyzing his argument under a plain error analysis and, instead, exercise our discretion to review *de novo* his unpreserved issue. Alternatively, Mr. Quijada claims the district court erred by granting the government's Rule 35 motion to correct the initial sentence. He also complains the district court erred in mandatorily applying the Sentencing Guidelines in determining the length of his sentence. In countering Mr. Quijada's claims, the government asserts he waived his categorical argument by not objecting to the facts in the presentence report, or, alternatively, because Mr. Quijada failed to raise his argument at the district court level, we must review it under a plain error analysis. It also opposes Mr. Quijada's Rule 35 and mandatory sentencing claims.

## II. Discussion

### A. Prior Convictions

Since the time Mr. Quijada filed his appeal, the Supreme Court issued *United States v. Booker*, which applies its ruling in *Blakely* to the Federal

Sentencing Guidelines. 543 U.S. ___, ___, 125 S. Ct. 738, 755-76 (2005). In advancing their positions, the parties discussed both *Booker* and our subsequent decision in *United States v. Moore*, 401 F.3d 1220 (10th Cir. 2005). In *Moore*, we held that under *Booker* the government is not required to charge in an indictment or prove to a jury either: 1) the existence of prior convictions, or 2) their classification as "violent felonies." *Id.* at 1221, 1224-25 & n.2.

With respect to the former, concerning the existence of prior convictions, *Booker* patently reaffirms Supreme Court precedent that a prior conviction is an exception to factual jury submissions by stating, "[a]ny fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at ___, 125 S. Ct. at 756 (emphasis added). Thus, it is clear the government did not need to charge the "fact" of Mr. Quijada's prior convictions in the indictment or submit it to a jury. *See Moore*, 401 F.3d at 1224.

With respect to the characterization of prior convictions as crimes of violence, we have determined it involves a question of law and not fact, so it does not implicate the Sixth Amendment for the purpose of requiring the

-8-

characterization of the offense to be charged in the indictment and proven to a jury. *See id.* at 1224-26. Thus, we can easily resolve and dismiss Mr. Quijada's district court argument that a jury, not the district court, should have determined any issue with respect to the characterization of his convictions as "crimes of violence."

In order to fully understand Mr. Quijada's new argument on appeal that the district court improperly failed to apply a categorical approach in characterizing his prior convictions as crimes of violence, we look at the principles involving the categorical approach. When a defendant contests whether his prior conviction is a crime of violence, we have held that the trial court is generally required to take a categorical approach by looking only to the fact of the conviction and the statutory definition of the prior offense. *United States v. Hernandez-Rodriguez*, 388 F.3d 779, 782 (10th Cir. 2004) (relying on *Taylor v. United States,* 495 U.S. 575, 602 (1990)). When the statute "reaches behavior that may or may not encompass conduct that constitutes a crime of violence," we have held an exception exists allowing the district court to "look to the charging paper and judgment of conviction in order to determine if the actual offense the defendant was convicted of qualifies as a crime of violence." *Id.* at 782-83 (quotation marks and citations omitted). This type of categorical approach allows the sentencing

court to examine sources of undisputed information rather than conduct a fact-finding inquiry, thereby sparing it from conducting mini-trials on prior offenses which have already been adjudicated. *See United States v. Damon*, 127 F.3d 139, 145 (1st Cir. 1997).

Since our decision in *Hernandez-Rodriguez* and the Supreme Court's decisions in *Taylor, Blakely*, and *Booker*, the Supreme Court has looked at the categorical approach and exceptions thereto in the context of situations where, like here, the defendant pled guilty to a prior offense. *See Shepard v. United States*, ___ U.S. ___, 125 S. Ct. 1254 (2005). In determining whether a prior offense qualifies as a crime of violence, it explained a court is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and *any explicit factual finding by the trial judge to which the defendant assented*." *Id.* at 1257 (emphasis added).

The categorical approach begins with an examination of the statute supporting the prior conviction. In this case, § 13A is entitled "Assault or assault and battery; punishment" and states that "[w]hoever commits an assault or an assault and battery upon another shall be punished by imprisonment for not more than 2 ½ years in a house of correction or by a fine of not more than $1,000."

Mass. Gen. Laws ch. 265, § 13A. As the parties in this case acknowledge, the elements for assault and battery are not statutorily defined but, instead, are defined solely by common law. *See Commonwealth v. Burke*, 457 N.E.2d 622, 624 (Mass. 1983); *Commonwealth v. Slaney*, 185 N.E.2d 919, 922 (Mass. 1962). Under Massachusetts common law, "[a]n assault and battery is the intentional and unjustified use of force upon the person of another, however slight ...." *See Commonwealth v. McCan*, 178 N.E. 633, 634 (Mass. 1931). The Massachusetts Supreme Court, as well as the First and Seventh Circuits, has determined § 13A covers two separate crimes involving 1) actual (or potential ) physical harm, and 2) nonconsensual, nonharmful touching. *See United States v. Jones*, 235 F.3d 342, 346 (7th Cir. 2000); *United States v. Fernandez*, 121 F.3d 777, 779 (1st Cir. 1997) (relying on *United States v. Harris*, 964 F.2d 1234, 1236 (1st Cir. 1992)); *Burke*, 457 N.E.2d at 624-25.

It is at this juncture during a categorical inquiry that a determination must be made as to whether a conviction under such a statute constitutes a "crime of violence" under the applicable federal law and, if not, whether the charging documents assist in the determination. Because various federal statutes and guidelines define the term "crime of violence," a determination must be made on the applicable definition. The Guidelines section under which Mr. Quijada

challenges his enhancement, § 2L1.2(b)(1)(A)(ii), proscribes a sixteen-level enhancement for a prior conviction involving a "crime of violence." A crime of violence under § 2L1.2(b)(1)(A) means "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, cmt. n.1 (hereinafter "the § 2L1.2 definition"). Applying § 2L1.2(b)(1)(A), it is apparent that "force" is an element of the Massachusetts statute, *see McCan*, 178 N.E. at 634, which the government suggests is sufficient to meet the § 2L1.2 definition because it does not quantify the amount of force. Mr. Quijada suggests the qualifying term "however slight" requires the force to be violent in order to constitute a crime of violence. This court has not yet construed the amended definition of a "crime of violence" under U.S.S.G. § 2L1.2 to determine the degree, if any, of the use or threat of use of force necessary to constitute a crime of violence.[2] *See United*

---

[2] By supplemental authority, Mr. Quijada directs us to our decision in *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005), in which we applied the § 2L1.2 definition to categorically determine whether a prior conviction for third degree assault under Colorado law constituted a "crime of violence." In that case, the statute at issue did not focus on physical force, but instead focused on the result of the defendant's conduct, stating third degree assault occurs when the defendant causes bodily injury to another person. *Id.* at 1285. After considering the possibilities provided by the defendant in which third degree assault would not include "physical force," we concluded the statute did not meet the definition of a "crime of violence" as required by the § 2L1.2 definition. *Id.* at 1287. While Mr. Quijada cursorily concludes *Perez-Vargas* is dispositive of the issue in his case, we note that, unlike the Colorado statute in that case, Massachusetts common law specifically focuses on physical force, stating: "assault and battery is the intentional and unjustified use of force upon the person of another, however slight ...."

*States v. Munguia-Sanchez*, 365 F.3d 877, 880 n.2 (10th Cir.), *cert. denied*, 125 S.

Ct. 133 (2004). Thus far, we have only discerned that "intent" to use, or threaten

to use, force is required under § 2L1.2(b)(1)(A). *See Torres-Ruiz*, 387 F.3d at

1183-87 (relying in part on *United States v. Lucio-Lucio*, 347 F.3d 1202, 1204-06

(10th Cir. 2003)).

While both parties suggest the § 2L1.2 definition applies in this case, they

nevertheless rely on cases using other definitions of "crime of violence" to

support their arguments on the degree of force, if any, necessary. The

government points to U.S.S.G. § 4B1.2, the career offender Guidelines definition,

which defines "crime of violence" differently from § 2L1.2, as "any offense" that

"has as an element the use, attempted use, or threatened use of physical force

against the person of another, or ... *otherwise involves conduct that presents a*

*serious potential risk of physical injury to another*." The government recognizes

the difference in the two definitions but states that the result is the same,

regardless of which definition is used. We acknowledge that a crime of violence

under § 2L1.2(b)(1)(A) was previously defined in conjunction with § 4B1.2, but

---

*McCan*, 178 N.E. at 634. As a consequence, *Perez-Vargas* gives no insight on the degree of force required. It also does not analyze the § 2L1.2 definition in terms of either § 16 or § 4B1.2, as raised by the parties and discussed hereinafter. *See also Torres-Ruiz*, 387 F.3d at 1183-85 (considering "intent" to use "force" to cause "bodily injury" and analyzing § 2L1.2(b)(1)(A) in conjunction with § 4B1.2 and § 16).

since its amendment in 2001 that is no longer the case. *Compare* U.S.S.G.

§ 2L1.2, cmt. n.1 (2000) (stating "[c]rime of violence ... [is] defined in § 4B1.2)

*with* U.S.S.G. § 2L1.2 cmt. n.1 (2001) (omitting definition reference to § 4B1.2).

On the other hand, Mr. Quijada relies on a different definition, as employed

under 18 U.S.C. § 16.[3]  Section 16 defines "crime of violence" differently than

the commentaries to § 2L1.2 or § 4B1.2, stating it is:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves *a substantial risk that physical force* against the person or property of another *may be used in the course of committing the offense*.

18 U.S.C. § 16.  Without an in depth comparison or discussion, Mr. Quijada

summarily contends the § 2L1.2 definition is comparable to § 16 because it

requires a violent or destructive force to constitute a crime of violence.

While we have not definitively determined whether the amended § 2L1.2

---

[3]  An application note to § 2L1.2 states that for the purposes of § 2L1.2(b)(1)(C) "aggravated felony" is defined in 8 U.S.C. § 1101(a)(43). U.S.S.G. § 2L1.2, cmt. n.3. According to subsection (E) of § 1101(a)(43), the term "aggravated felony" includes, among other crimes, a "crime of violence" as defined in 18 U.S.C. § 16.  In this case, Mr. Quijada agreed to an eight-level enhancement under § 2L1.2(b)(1)(C) (as defined under 18 U.S.C. § 16) based on his admission his prior convictions constituted aggravated felonies.

definition is more comparable to either § 16 or § 4B1.2, we have recognized a distinction between the "risk of *physical injury*," under the § 4B1.2(a)(2) definition, and the risk of *"physical force ... in the course of committing the offense,"* under the 18 U.S.C. § 16(b) definition, the latter of which we have said is less broad and requires "destructive or violent force." *See United States v. Venegas-Ornelas*, 348 F.3d 1273, 1275-77 & n.2 (10th Cir. 2003), *cert. denied*, 125 S. Ct. 494 (2004). While we have generally said § 16 requires "destructive or violent" force, we have also held, in a sexual abuse case, that § 16 does not reference physical force in terms of a particular nature or severity. *See McCann v. Bryon L. Rosquist, D.C., P.C.*, 185 F.3d 1113, 1120-21 (10th Cir. 1999) (holding sexual abuse defined under Utah statute as nonconsensual sexual touching of another is a form of assault and battery and "implicates substantial risk of physical force" constituting a crime of violence), *cert. granted, judgment vacated on other grounds*, 529 U.S. 1126 (2000). Moreover, in ascertaining whether § 2L1.2(b)(1)(A) requires "intent" to use "force," we have relied on both the § 16 and § 4B1.2 definitions for guidance. *See Torres-Ruiz,* 387 F.3d at 1185-87.

Other courts have attempted to discern the different nuances the § 16 and § 4B1.2 definitions may pose in relation to the § 2L1.2 definition and have come

to different conclusions. *See, e.g., United States v. Asberry*, 394 F.3d 712, 716-17 (9th Cir. 2005) (suggesting the Sentencing Commission amended the § 2L1.2 application note definition for the purpose of clarifying its use with respect to sex offenses, and therefore it did not change the definition § 2L1.2 "originally borrowed" from § 4B1.2), *petition for cert. filed* (U.S. Jun. 27, 2005) (No. 05-5109); *United States v. Vargas-Duran*, 356 F.3d 598, 607-08 (5th Cir.) (special concurrence) (contending the court should not consider definitions under either 18 U.S.C. § 16(b) or U.S.S.G. § 4B1.2 in determining what constitutes a "crime of violence" under the 2001 § 2L1.2 definition), *cert. denied*, 541 U.S. 965 *and* 125 S. Ct. 494 (2004); *United States v. Calderon-Pena*, 339 F.3d 320, 327 & n.6 (5th Cir. 2003) (cautioning against reliance on prior cases applying definitions of "crime of violence" but concluding sufficient similarity exists to consider precedent interpreting and applying § 16(a) when interpreting the § 2L1.2 definition); *United States v. Rayo-Valdez*, 302 F.3d 314, 318 (5th Cir. 2002) (stating "[i]t is of no consequence that the structure and syntax of the definitions of 'crime of violence' in § 2L1.2 and § 4B1.2 differ slightly," and that "the two definitions are substantially the same and should be consistently construed").

The government, in support of its § 4B1.2 argument, directs us to two First Circuit cases which apply the § 4B1.2 definition to circumstances identical to

those presented here. In *United States v. Mangos*, the First Circuit held any prior conviction under the statute at issue here, Mass. Gen. Laws ch. 265, § 13A, even if for nonharmful assault and battery, is a crime of violence. 134 F.3d 460, 464 (1st Cir. 1998). In support, it reasoned that "[u]nder the Sentencing Guidelines, the term 'crime of violence' is not limited to those crimes for which violence is a necessary element, but instead extends to any crime which," under § 4B1.2, "'otherwise involves conduct that presents a serious potential risk of physical injury to another.'" *Id.* (quoting § 4B1.2(a)(2)). In so concluding, it acknowledged Mass. Gen. Laws ch. 265, § 13A does not identify violence or the use of force as an essential element of the crime, as statutorily defined, but held violence, the use of force, or a serious risk of physical harm are all likely to accompany either type of assault and battery. *Id.* (relying on *Fernandez*, 121 F.3d at 780). In the other case, after applying the categorical approach and then looking beyond the statutory and common law definitions, the First Circuit looked at the complaint, which, like here, alleged the defendant did "*assault and beat*" the victim, and held such a characterization also placed the offense in the harmful battery category, thereby meeting the definition of a crime of violence under § 4B1.2. *United States v. Santos*, 363 F.3d 19, 23-24 (1st Cir. 2004), *cert. denied*, 125 S. Ct. 1636 (2005).

On the other hand, the government acknowledges a split in the circuits and directs us to a Seventh Circuit case in which it came to a different conclusion when analyzing the same Massachusetts statute and a similar complaint under § 4B1.2. After determining that actual, attempted, or threatened physical force is not a necessary element of an offense under Mass. Gen. Laws ch. 265, § 13A, it considered whether the offense supporting the conviction involved conduct which presented a "'serious potential risk of physical injury to another'" under § 4B1.2(a). *Jones*, 235 F.3d at 347. In so doing, it looked to the charging document in that case, which, like here, alleged the defendant "did assault and beat" the victim. *Id.* It concluded the phrase "assault and beat" was somewhat deceptive, given it is the standard language used for all assault and battery charges in Massachusetts.[4] *Id.* (relying on Mass. Gen Laws ch. 277, § 79,

_____

[4] For example, the charging documents in the following Massachusetts cases used the referenced "boilerplate" language "assault and beat" in describing the crimes committed. *See, e.g., Commonwealth v. Levesque*, 766 N.E.2d 50 (Mass. 2002) (concerning conviction for failure to report accidentally started fire which resulted in deaths of six firemen); *Commonwealth v. Moure*, 701 N.E.2d 319 (Mass. 1998) (convicting gang member who shot into crowd and killed victim); *Commonwealth v. Vaughn*, 687 N.E.2d 270 (Mass. 1997) (upholding conviction of individual who injected lethal dose of heroin into woman); *Commonwealth v. Valcourt*, 133 N.E.2d 217 (Mass. 1956) (relating to arsonist convicted for death of three individuals); *Commonwealth v. Sostilio*, 89 N.E.2d 510 (Mass. 1949) (concerning driver in "midget" automobile race convicted when he bumped another car, resulting in death of that driver); *Commonwealth v. Noxon*, 66 N.E.2d 814 (Mass. 1946) (convicting father of first degree murder after he electrocuted infant son). Clearly, the use of "beat" in these cases does not comport with the commonly defined meaning of "beat"; *i.e.*, to strike, hit or flog repeatedly. *See* Webster's II New Riverside Univ. Dictionary 160 (1984).

Schedule of Forms of Pleadings, stating "the forms hereto annexed, shall apply as well to complaints as to indictments" and giving example of assault and battery as "[t]hat A.B. did assault and beat C.D."); *Harris*, 964 F.2d at 1237 (acknowledging "assault and beat" under Massachusetts law is "boilerplate" language). Because neither the statute nor the charging documents clarified which type of assault and battery the defendant committed, the Seventh Circuit found the district court erred in holding an evidentiary hearing to determine if the conviction was for a crime of violence. *Jones,* 235 F.3d at 347-48.

Relying exclusively on the definition provided in 18 U.S.C. § 16, Mr. Quijada relies on a different Seventh Circuit case which considered a defendant's prior conviction under the § 16 definition of "crime of violence" when it applied a categorical approach in analyzing an Indiana statute defining battery as the touching of another "in a rude, insolent, or angry manner." *Flores v. Ashcroft*, 350 F.3d 666, 668-69 (7th Cir. 2003). After examining the differing degrees of "force" applied for different actions, the court determined "[e]very battery entails a touch, and it is impossible to touch someone without applying *some* force, if only a smidgeon." It then held that "[t]o avoid collapsing the distinction between violent and non-violent offenses," force must "be violent in nature -- the sort that is intended to cause bodily injury, or at a minimum likely to do so." *Id.* at 672. It

-19-

concluded that if the elements of the past offense are "on the 'contact' side," the conviction "cannot properly be classified as a crime of violence." *Id.* In contrast, as previously indicated in reference to sexual abuse, this court has suggested § 16 refers only to physical force and that physical force of a particular nature or severity is not referenced. *See McCann*, 185 F.3d at 1120-21.

Other circuits have also looked at the issue of what degree of "force," if any, is required to constitute a "crime of violence" under various statutes and Guidelines definitions and have come to different conclusions. *Compare Chery v. Ashcroft*, 347 F.3d 404, 408 (2d Cir. 2003) (holding "risk of the use of force" under 18 U.S.C. § 16 was inherent in Connecticut sexual intercourse statute, so even though violence or force are not explicit elements of the statute, a conviction under the statute constitutes a crime of violence and, in support, listing numerous other circuit court sexual assault cases with similar holdings), *and United States v. Nason*, 269 F.3d 10, 16-18 (1st Cir. 2001) (holding Congress intended the phrase "physical force" incorporated into § 922(g)(9) to "encompass crimes characterized by the application of *any* physical force"), *with Singh v. Ashcroft*, 386 F.3d 1228, 1233-34 (9th Cir. 2004) (holding conviction under Oregon harassment statute which did not have elements of use, attempted use, or threatened use of physical force did not constitute a crime of violence under 18

-20-

U.S.C. § 16, as the force necessary to constitute a crime of violence must actually be violent in nature).

Regardless of which other definition of "crime of violence" most aptly applies to § 2L1.2 or the degree of force necessary to constitute a "crime of violence," the parties ask us to resolve the categorical issue before us in two different ways. Mr. Quijada asks us to exercise our discretion to review and decide the issue *de novo,* even though he acknowledges his failure to preserve it. In applying the categorical approach, he suggests we resolve *de novo* the issue of what degree of force must be used to constitute a crime of violence under the § 2L1.2 definition in conjunction with the common law elements of the Massachusetts statute.

In contrast, the government suggests Mr. Quijada waived the issue of analyzing his prior conviction through a categorical approach when he: 1) failed, on three occasions, to object to the facts in the pre-plea and revised presentence reports, which described his conduct in grabbing one victim by the throat and throwing her against a wall and elbowing the other victim; and 2) did not object to the use of the enhancement on the grounds he now raises on appeal. Alternatively, for the same reasons, the government advocates we review the issue

before us for plain error.  In the event we review the issue *de novo* and apply the categorical approach, it suggests we rely on the charging document containing the "assault and beat" language, which, it contends, is sufficient to constitute a "crime of violence."

"Normally, failure to alert the trial court to an error precludes review of that same issue by this court."  *United States v. Saucedo*, 950 F.2d 1508, 1511 (10th Cir. 1991) (quotation marks and citations omitted), *overruled on other grounds, Stinson v. United States*, 508 U.S. 36 (1993).  "However, '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'"  *Id.* (quoting Fed. R. Crim. P. 52(b)).  Still, this plain error exception "is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'  In order to invoke the [plain error] exception, the error must be 'particularly egregious' ... as well as 'obvious and substantial.'"  *Id.* (citations omitted).

This court has repeatedly held that a factual dispute concerning the applicability of a particular guideline not brought to the attention of the district court constitutes a waiver and does not rise to the level of plain error.  *Id.* at 1518.  *See also United States v. Yarnell*, 129 F.3d 1127, 1137-38 (10th Cir.

1997); *United States v. Farnsworth*, 92 F.3d 1001, 1009 n.5 (10th Cir. 1996). We have applied this waiver principle to facts underlying prior criminal acts, *see United States v. Yates*, 22 F.3d 981, 989 (10th Cir. 1994), and note it does not appear to be directly affected by the rule in *Booker,* because, as previously discussed, the characterization of prior convictions does not implicate the Sixth Amendment for the purpose of triggering the *Booker* rule.[5] *See Moore*, 401 F.3d at 1224-26. Moreover, a defendant's obligation under Federal Rule of Criminal Procedure 32[6] to point out factual inaccuracies concerning the characterization of a prior conviction has not been relieved under *Booker*. Thus, Mr. Quijada's

[5] Because this case involves a prior conviction to which *Booker* does not apply, we believe the waiver rule as applied here is distinguishable from this court's determination that the waiver rule is inapplicable to a defendant's failure to object to facts "for purposes of the rights announced in *Booker*." *United States v. Bass*, 411 F.3d 1198, 1204 n.7 (10th Cir. 2005) (questioning remaining validity of the waiver rule after *Booker* with respect to failure to object to facts contained in the presentence report which pertained to the instant offense and which resulted in a judicially-found factual enhancement).

[6] *See United States v. Virgen-Chavarin*, 350 F.3d 1122, 1132 (10th Cir. 2003) (relying on 18 U.S.C. § 3552(a) and Rule 32 in stating that "accuracy is paramount in the sentencing process" and explaining the parties have an obligation to object to inaccuracies in the presentence report as part of the focused, adversarial development of the factual issues relevant to determining the appropriate sentence); *United States v. Archer*, 70 F.3d 1149, 1151 (10th Cir. 1995) (relying on Rule 32 to indicate the defendant must assert contradictory facts challenging the accuracy of the presentence report to successfully carry the burden of alleging factual inaccuracies); *Yates*, 22 F.3d at 989 (holding that only facts which are contested at sentencing must be established by a preponderance of the evidence); *United States v. Kay*, 961 F.2d 1505, 1507 (10th Cir. 1992) (stating Rule 32 contemplates a defendant raise any factual inaccuracy in the presentence report with the district court and failure to do so constitutes wavier of the issue).

repeated failure at the district court level to object to facts relating to the characterization of his prior convictions as crimes of violence constitutes a waiver of the issue under this court's clear precedent,[7] and Mr. Quijada presents little, if no, support to persuade us otherwise.[8] As the court in *Shepard* explained when determining the character of a prior offense, the court may examine "any explicit factual finding by the trial judge to which the defendant assented." 125 S. Ct. at 1257. Arguably, failure on at least three occasions to object to facts relating to the characterization of a prior conviction meets this criteria.

Nevertheless, even if we apply a plain error analysis, Mr. Quijada cannot prevail. Under the plain error test, an appellate court may correct an alleged error not raised at trial if 1) an error in fact occurred, which 2) is "plain," 3) affects substantial rights, and 4) seriously affects the fairness, integrity or public reputation of the judicial proceedings. *See Johnson v. United States*, 520 U.S. 461, 466-67 (1997). In addressing the first criterion, it is arguable whether the

---

[7] The Supreme Court has explained that waiver of an error, which extinguishes the error, is different from forfeiture, which is reviewed for plain error: "forfeiture is the failure to make the timely assertion of a right, [while] waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993).

[8] Under these circumstances, Mr. Quijada certainly has not persuaded us that a *de novo* review is appropriate in this case.

district court committed any error, given it had no basis to believe the 1998 convictions were not properly characterized as crimes of violence, due to Mr. Quijada's repeated failure to dispute the factual representations supporting such a characterization. Neither can we say the district court erred by failing to *sua sponte,* or "clairvoyantly," apply the categorical approach in assessing whether the prior convictions constituted crimes of violence, given Mr. Quijada's failure to dispute the facts underlying his convictions, contest the probation officer's characterization of the convictions as "crimes of violence," or raise the issue he now raises on appeal.

We also cannot say any error in the district court's characterization of his prior convictions as "crimes of violence" was plain, or, in other words, "clear" or "obvious," *Johnson*, 520 U.S. at 467, given the particular ambiguities in the law. This is because, as previously discussed, circuit courts have differed in considering whether "assault and battery" under Mass. Gen. Laws ch. 265, § 13A, without more, may be characterized as a "crime of violence" and whether "assault and beat," as charged, is sufficient to constitute a "crime of violence." Similarly, as previously discussed, this court has not fully construed the new § 2L1.2 definition, and other courts have provided inconsistent interpretations of that definition as well as decisions on the amount of force, if any, necessary to

-25-

constitute a "crime of violence."

Finally, we cannot say the error, if any, affected Mr. Quijada's substantial rights. In analyzing whether an error affects a defendant's substantial rights, it is his or her burden to show the error is prejudicial; *i.e.*, the error "must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. In meeting this burden, Mr. Quijada must show "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, ___, 124 S. Ct. 2333, 2339 (2004) (quotation marks and citation omitted).

In this case, even if the district court somehow erred in applying the 1998 convictions as "crimes of violence," Mr. Quijada had a prior conviction in 1993 for assault and battery with a deadly weapon which involved the use of a set of "nunchucks"[9] on another person in violation of Mass. Gen. Laws ch. 265, § 15A.[10]

---

[9] "Nunchucks" are martial arts weapons comprised of two pieces of wood or steel attached or connected by a string, cord or chain. *See Trice v. Ward*, 196 F.3d 1151, 1157 (10th Cir. 1999) (describing nunchucks and lethal injuries inflicted on victim with them); *United States v. George*, 778 F.2d 556, 558 n.1 (10th Cir. 1985) (describing the characteristics of nunchucks).

[10] We decline to speculate further whether a prior conviction under Mass. Gen. Laws ch. 265, § 15A constitutes a "crime of violence," given Mr. Quijada's failure to carry his burden in asserting otherwise for the purpose of showing prejudicial error.

Under the circumstances presented, it is likely the government and the probation officer would have alternatively sought, and the district court would have applied, this conviction for the purpose of enhancing Mr. Quijada's sentence, had he timely objected to the use of the 1998 convictions. In fact, the government contends if it had received notice of Mr. Quijada's new claim during the district court proceedings it would have moved the court to use the 1993 prior conviction instead. Thus, Mr. Quijada has not shown his sentence would have been different, but for the error he now claims. Under these circumstances, we cannot say the error affected Mr. Quijada's substantial rights. Because Mr. Quijada fails to meet his burden with respect to the third prong, it is unnecessary for us to address the last prong, given all four prongs must be met for successful plain error resolution. *See Olano*, 507 U.S. at 741.

## B. Rule 35 Motion

We next resolve Mr. Quijada's argument the district court improperly granted the government's Rule 35 motion. Federal Rule of Criminal Procedure 35, in part, empowers a court to correct or reduce a defendant's sentence for an "arithmetical, technical, *or other clear error*." Fed. R. Cr. P. 35(a) (emphasis

added).[11]

> The rule[] is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action under Rule 35(a) [requiring remand when the sentence is imposed in violation of law, as a result of an incorrect application of the sentencing guidelines, or is unreasonable]. The subdivision is not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence. Nor should it be used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines.

*United States v. Abreu-Cabrera*, 64 F.3d 67, 72 (2d Cir. 1995) (quoting Advisory Committee Notes to Fed. R. Crim. P. 35). *See also United States v. Gordon K.*, 257 F.3d 1158, 1161-62 (10th Cir. 2001) (quoting, in part, Advisory Committee Notes and finding court lacked authority to modify the defendant's sentence based on "new information").

In this case, the district court initially did not apply the § 2L1.2(b)(1)(A) enhancement, based on its mistaken belief the rule in *Blakely* allowed only a jury to determine the characterization of Mr. Quijada's prior convictions as "crimes of

---

[11] In 2002, the substantive provisions of Rule 35(c) were moved to subsection (a), and, consequently, earlier decisions applying subsection (c) are applicable in construing the current subsection (a). *See United States v. Green*, 405 F.3d 1180, 1185 n.4 (10th Cir. 2005).

violence." As the government contends, this mistake or violation of the law was clear error and obvious because it was in direct conflict with our contemporaneous holding in *Cooper*, and subsequent ruling in *Moore*, that the fact of a prior conviction and its characterization need not be submitted to a jury because prior convictions are excepted from the rule announced in *Blakely*. *See Moore*, 401 F.3d at 1223-24; *Cooper*, 375 F.3d at 1053 n.3. The district court determined it made a mistake of law which constituted grounds for remand of the original sentence, and, therefore, the government's motion met the requirements for resentencing Mr. Quijada under Rule 35. Under the circumstances, we agree and conclude the district court's decision to grant the government's Rule 35 motion was proper.

## C. Sentence Length

Finally, we address whether the district court committed a nonconstitutional *Booker* error which would warrant a remand, given Mr. Quijada was sentenced to the low end of the Guidelines range. While Mr. Quijada did not raise this issue before the district court, at our behest at oral argument he addressed the issue and argued that under this court's ruling in *United States v. Labastida-Segura*, 396 F.3d 1140 (10th Cir. 2005), and the Second Circuit's ruling in *United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005), his sentence should be remanded to allow

the district court an opportunity to resentence him under an advisory sentencing scheme. At oral argument, he further asserted the district court's announcement of an alternative sentence of forty-six months was inapposite because it based the alternative sentence solely on the contingency of the Supreme Court ruling the Guidelines are unconstitutional, rather than its ultimate holding that they are to be applied in an advisory capacity.

In response, the government suggests the advisory nature of the Guidelines is somewhere between a mandatory application and an unconstitutional ruling, and, therefore, if the district court would have imposed a forty-six-month sentence under an unconstitutional Guidelines scheme, it would not change its position in applying the Guidelines in an advisory capacity. We agree, and find the distinction drawn by Mr. Quijada unconvincing under the specific facts of this case.

First, it is clear the holding in *Booker* makes the Sentencing Guidelines advisory, rather than mandatory, and in so ruling the Supreme Court remedied any constitutional infirmity. *See United States v. Ambort*, 405 F.3d 1109, 1118 (10th Cir. 2005). In *Labastida-Segura*, we determined the error of mandatorily imposing the Guidelines range is a non-constitutional error, and we applied a

harmless error analysis, given the defendant preserved the issue at the district court level. 396 F.3d at 1142-43. *See also United States v. Serrano-Dominguez*, 406 F.3d 1221, 1222-23 (10th Cir. 2005) (explaining mandatory application of Guidelines range in determining sentence length is nonconstitutional *Booker* error). However, in this case, Mr. Quijada did not preserve the nonconstitutional error; therefore, we review the issue presented for plain error. *See Ambort*, 405 F.3d at 1118 (relying on *United States v. Gonzalez-Huerta*, 403 F.3d 727, 729 (10th Cir. 2005) (en banc)).

Assuming the district court committed an error that is plain, Mr. Quijada must still establish the error affected his substantial rights by showing it "'affected the outcome of the district court proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 734). In meeting this burden, Mr. Quijada must show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* (quotation marks and citations omitted). A defendant can meet this burden by demonstrating a reasonable probability that, under the specific facts of the case as analyzed under the sentencing factors in 18 U.S.C. § 3553(a), the district court would reasonably impose a sentence outside the Guidelines range. *See United States v. Dazey*, 403 F.3d 1147, 1175 (10th Cir. 2005). In *Dazey*, we explained a defendant might make such a showing "if during

-31-

sentencing the district court expressed its view that the defendant's conduct, based on the record, did not warrant the minimum Guidelines sentence ...." *Id.* In other words, we may look to see "whether there is a 'disconnect' between the § 3553(a) factors and the sentence" or if "the district court expressed dissatisfaction with the mandatory Guidelines." *United States v. Nguyen*, 413 F.3d 1170, 1183-84 (10th Cir. 2005).

In this case, nothing in the record indicates the district court's dissatisfaction with the sentence or that it would impose a lesser sentence under an advisory, rather than a mandatory, sentencing scheme. When ruling on the Fed. R. Crim. P. 35 motion and sentencing Mr. Quijada at the bottom of the Guidelines range at forty-six months at the government's request, the district court did not express a view Mr. Quijada's conduct warranted a lesser sentence. Moreover, unlike the situation in *Labastida-Segura*, our inquiry into Mr. Quijada's sentence length is not "in the zone of speculation and conjecture," 396 F.3d at 1143, given the district court at both hearings provided an alternative sentence of forty-six months, which Mr. Quijada has not otherwise shown would result in a different sentence on remand, even in an advisory capacity.[12] *See*

_____

[12] By supplemental authority, Mr. Quijada directs us to an unpublished panel decision which ordered the defendant's mandatorily imposed sentence remanded even though the district court announced the same alternative sentences, as in this case, where

*Serrano-Dominguez*, 406 F.3d at 1224. In addition, Mr. Quijada's sentence length is comparable to that of similarly situated defendants and he has not shown it is outside the national norm. *See Nguyen*, 413 F.3d at 1184; *Gonzalez-Huerta*, 403 F.3d at 738-39. Thus, Mr. Quijada fails to establish "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Ambort*, 405 F.3d at 1118 (quotations marks and citations omitted).

III. Conclusion

For the foregoing reasons, we **AFFIRM** Mr. Quijada's conviction and sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

---

it stated, in part, it would impose the same sentence in the event the Guidelines were deemed unconstitutional. *See United States v. Allen*, 134 Fed. Appx. 261, 265 (10th Cir. June 8, 2005) (unpublished op.). We note that in *Allen* the defendant's sentence was reviewed for harmless error given the defendant raised it before the district court, and therefore the burden was on the government to show the error was harmless, which it failed to even attempt to carry. *Id.* at 264. In this case, as indicated, we view Mr. Quijada's mandatory sentence for plain error given he did not raise it before the district court, and thus, unlike *Allen*, it is Mr. Quijada's burden to show the district court would impose a lesser sentence on remand, which he has failed to do.