**F I L E D**

**UNITED STATES COURT OF APPEALS**

**December 5, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

HERIBERTO ORTEGA-ESTRADA,

    Defendant-Appellant.

No. 05-2194
(District of New Mexico)
(D.C. No. CR-05-390-WPJ)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **KELLY**, and **MURPHY**, Circuit Judges.

I.    **Introduction**

Appellant Heriberto Ortega-Estrada pleaded guilty to a charge of illegally reentering the United States.  The Presentence Investigation Report ("PSR") recommended the application of the sixteen-level enhancement set forth in § 2L1.2(b)(1)(A) of the United States Sentencing Guidelines ("USSG"), based on Ortega-Estrada's prior Washington state conviction for second-degree assault.  In

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

his sentencing memorandum, Ortega-Estrada challenged the application of the sixteen-level enhancement and argued a sentence between fifteen and twenty-two months would be a reasonable sentence in his case. The district court overruled Ortega-Estrada's objections to the PSR and sentenced him to forty-one months' imprisonment, the low end of the guidelines range. Ortega-Estrada then filed this appeal, arguing both that the district court erred when it applied the § 2L1.2(b)(1)(A) enhancement and that his sentence is unreasonable. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** Ortega-Estrada's sentence.

## II.    Background

Ortega-Estrada was arrested by New Mexico police and charged with Driving While Intoxicated. United States Border Patrol agents questioned Ortega-Estrada during his incarceration at the Roosevelt County Detention Center in Portales, New Mexico and then transported him to the border patrol station in Carlsbad, New Mexico. The agents determined Ortega-Estrada had been deported on January 28, 2000, but were unable to establish he had permission to reenter the United States. Further investigation revealed Ortega-Estrada had previously been convicted in Washington of second-degree assault, in violation of Washington Revised Code § 9A.36.021(c).

Ortega-Estrada was charged in an Information with illegally reentering the United States following deportation subsequent to being convicted of an aggravated felony, in violation of 8 U.S.C. § 1326(b)(2). Ortega-Estrada pleaded

guilty and a PSR was prepared. The PSR calculated Ortega-Estrada's criminal history category as II and his base offense level as eight. The PSR, however, recommended a sixteen-level increase to Ortega-Estrada's offense level pursuant to USSG § 2L1.2(b)(1)(A), based on the conclusion Ortega-Estrada's Washington second-degree assault conviction qualified as a felony crime of violence. After applying a downward adjustment for acceptance of responsibility, the PSR arrived at a final offense level of twenty-one which, when coupled with the criminal history category of II, resulted in an advisory guideline range of forty-one to fifty-one months.

Ortega-Estrada filed a sentencing memorandum, challenging the calculation of his total offense level. Specifically, Ortega-Estrada asserted the application of the sixteen-level enhancement set out in § 2L1.2(b)(1)(A) was unwarranted because the facts supporting the application of the enhancement were neither alleged in the Information nor admitted by him. Ortega-Estrada also argued the district court should depart downward from the advisory guideline range based on his "cultural assimilation, his status as a deportable alien, his prompt and extraordinary acceptance of responsibility, and the economic and personal difficulties which led him to commit [the] offense."[1] At the sentencing hearing, Ortega-Estrada further argued application of the advisory guidelines range would result in an unreasonable sentence because his Washington felony conviction was

_____

[1]Ortega-Estrada does not raise these arguments on appeal.

used three times to enhance his sentence "three different ways." According to Ortega-Estrada, the Washington felony conviction was used to: (1) raise his offense from illegal reentry under 8 U.S.C. § 1326(a) to illegal reentry after deportation for an aggravated felony under 8 U.S.C. § 1326(b)(1); (2) determine his criminal history category; and (3) justify the application of the § 2L1.2(b)(1)(A) enhancement. The district court overruled all of Ortega-Estrada's objections and sentenced him to forty-one months' imprisonment, the low end of the advisory guidelines range.

## III. Discussion

This court reviews the interpretation and application of the Sentencing Guidelines de novo. *United States v. Perez-Vargas*, 414 F.3d 1282, 1284 (10th Cir. 2005). Pursuant to § 2L1.2(b)(1)(A)(ii), the offense level of a defendant convicted of illegally reentering the United States is increased by sixteen levels if the defendant was deported after a previous conviction for a felony "crime of violence." The term "crime of violence" is defined in the Guidelines to include certain specific offenses, as well as "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 2L1.2, Application Note 1(B)(iii). In *United States v. Perez-Vargas*, we held Colorado third-degree assault convictions do not categorically qualify as crimes of violence under § 2L1.2(b)(1)(A) because the statutory language "does not necessarily include the use or threatened use of

-4-

'physical force' as required by the Guidelines." 414 F.3d at 1287. We further stated it was proper for a reviewing court to look beyond an ambiguous assault statute to charging documents, the terms of the plea agreement, or some comparable judicial record to determine on a case-by-case basis whether an assault conviction qualifies as a crime of violence under § 2L1.2(b)(1)(A). *Id*. at 1284 (citing *Shepard v. United States*, 544 U.S. 13, 24-26 (2005)). Relying on this court's holding in *Perez-Vargas*, Ortega-Estrada asserts the district court erred by applying the § 2L1.2(b)(1)(A) enhancement because the Washington assault statute pursuant to which he was convicted does not necessarily require the actual use, attempted use, or threatened use of physical force.[2] While the Government makes a strong argument that a Washington conviction for second-degree assault with a deadly weapon is categorically a crime of violence, we do not address the issue because our review of the record demonstrates Ortega-Estrada made a factual concession conclusively demonstrating his conviction qualifies as a crime of violence. *United States v. Hernandez-Garduno*, 460 F.3d 1287, 1294 (10th Cir. 2006) ("If the charging documents, plea agreement, transcript of a plea colloquy, or sentencing court findings of the prior state court conviction demonstrate that the [ ] assault did, in fact, involve the use, attempted

_____

[2]Although the Government does not argue waiver, our review of the record reveals that Ortega-Estrada never made this specific argument before the district court. We address the argument, however, because it presents only a non-jurisdictional question of law and "its proper resolution is certain." *Ross v. United States Marshal*, 168 F.3d 1190, 1195 n.5 (10th Cir. 1999).

use, or threatened use of physical force, then the particular defendant's prior assault conviction qualifies as a crime of violence under § 2L1.2(b)(1)(A)(ii).")

When Ortega-Estrada filed his sentencing memorandum with the district court, he attached a copy of a document captioned, Statement of Defendant on Plea of Guilty. This document memorializes Ortega-Estrada's plea of guilty to the Washington second-degree assault charge and bears a stamp indicating it was filed on November 24, 1999, in the County Clerk's Office in Okanogan County, Washington. The statement is signed by Ortega-Estrada and contains a paragraph stating, "The judge has asked me to state briefly in my own words what I did that makes me guilty of this crime. This is my statement: I assaulted Sandra Moomaw by threatening her with a knife *and cutting her*. I don't remember what happened because I was intoxicated." (emphasis added). This unambiguous factual concession is directly contrary to the bold assertion contained in Ortega-Estrada's appellate brief that the application of the § 2L1.2(b)(1)(A) enhancement was erroneous because the Government failed to meet its evidentiary burden of demonstrating that he "actually used force in causing an injury in the prior felony offense." It is beyond argument that the act of cutting an individual with a knife is a crime of violence pursuant to USSG § 2L1.2(b)(1)(A) because it involves the actual use of physical force. Thus, evidence sufficient to support the conclusion Ortega-Estrada actually used force in the commission of the Washington assault was submitted to the district court by Ortega-Estrada *himself*. In light of Ortega-

-6-

Estrada's admission of the facts supporting the application of the § 2L1.2(b)(1)(A) enhancement, we conclude he cannot establish the district court's application of the enhancement was error.

Ortega-Estrada also argues his Fifth and Sixth Amendment rights were violated because the district court engaged in judicial fact-finding prohibited by *Booker* when it found he had previously been convicted of second-degree assault. He asserts the fact of his prior conviction must be pled in an indictment or proven beyond a reasonable doubt to a jury. The Government, however, was not required to allege Ortega-Estrada's prior felony conviction in an indictment. *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998), (holding the existence of a prior conviction is merely a sentencing factor, not a separate element of the offense that must be pled in an indictment). This court has held that *Almendarez-Torres* remains good law after *Booker*. *United States v. Moore*, 401 F.3d 1220, 1224 (10th Cir. 2005) ("[W]e are bound by existing precedent to hold that the *Almendarez-Torres* exception to the rule announced in *Apprendi* [ *v. New Jersey*, 530 U.S. 466 (2000)] and extended to the Guidelines in *Booker* remains good law."). Although the concurring opinion in *Shepard v. United States* casts some doubt on the continuing validity of *Almendarez-Torres*, it has not been overruled. *See Shepard v. United States*, 544 U.S. 13, 27 (2005) (Thomas, J., concurring) (stating *Almendarez-Torres* "has been eroded by this

-7-

Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided").

Finally, Ortega-Estrada argues the sentence imposed by the district court is unreasonable. Because Ortega-Estrada was sentenced after *Booker,* this court reviews his sentence for reasonableness. *United States v. Booker*, 543 U.S. 220, 260-61 (2005). Under this standard, a sentence will not be reversed if the record demonstrates the sentence was "reasoned and reasonable." *United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005) (quotation omitted). Because we have concluded Ortega-Estrada's sentence fell within a properly calculated guidelines range, it is presumptively reasonable. *United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006). It is Ortega-Estrada's burden to "rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in [18 U.S.C.] § 3553(a)." *Id*.

Ortega-Estrada first argues, as he did before the district court, that the forty-one-month sentence is unreasonable because it was arrived at by triple-counting his Washington assault conviction. He also asserts application of the § 2L1.2(b)(1)(A) enhancement results in an inherently unreasonable sentence because the sixteen-level increase he received for the assault conviction is the same as that received by individuals with prior felony convictions for more serious felony offenses such as murder, rape, and robbery. Notwithstanding Ortega-Estrada's characterization of these arguments, they are not challenges to

the district court's application of the § 3553(a) factors but, instead, are challenges to policy decisions made by the Sentencing Commission. This court has clearly stated that disagreement with policy decisions incorporated into the Sentencing Guidelines is not a valid reason for imposing a sentence outside a properly calculated advisory guidelines range. *United States v. McCullough*, 457 F.3d 1150, 1171-72 (10th Cir. 2006) (involving a disparity in the treatment of crack and powder cocaine embodied in the Sentencing Guidelines).

We also reject Ortega-Estrada's final argument that his sentence was unreasonable because the conduct underlying his Washington assault conviction was "relatively trivial." *See United States v. Trujillo-Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005) (holding a defendant's criminal history is relevant to a consideration of his "history and characteristics" pursuant to 18 U.S.C. § 3553(a)). The record demonstrates Ortega-Estrada's prior felony conviction involved conduct that was far from trivial. The Washington assault conviction involved a domestic dispute between Ortega-Estrada and his girlfriend. Ortega-Estrada readily admits he brandished a knife while he was drunk and the record demonstrates he admitted cutting the victim of the assault with the knife. Further, the district court found that after illegally reentering the United States, Ortega-Estrada was incarcerated on a DWI charge for three months, demonstrating he had "little, if any, respect for the laws of the United States or the State of New

Mexico." We agree with the district court's analysis and conclude Ortega-Estrada has failed to rebut the presumption that his sentence was reasonable.

**IV.     CONCLUSION**

For the reasons stated above, the sentence imposed by the United States District Court for the District of New Mexico is **affirmed**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge