**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 2, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LEODEGARIO PEREZ-PEREZ,

    Defendant-Appellant.

No. 06-2293

(D.C. No. CR-06-480 BB)

(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA, BALDOCK**, and **KELLY**, Circuit Judges.

Border Patrol agents discovered Defendant, a Mexican National, near Deming, New Mexico in January 2006. Defendant was charged in an Information with illegally reentering the United States following deportation subsequent to being convicted of an aggravated felony, in violation of 8 U.S.C. § 1326(b)(2). Defendant entered into a plea agreement with the Government pursuant to Fed. R. Crim. P. 11. The agreement provided the Government could withdraw from the agreement if it later learned Defendant's previous conviction allowed for a sentencing enhancement under the United States Sentencing Guidelines

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(U.S.S.G.). After it entered into the plea agreement, the Government learned Defendant's previous felony conviction qualified as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii), and thus, Defendant was subject to an enhancement. When the parties appeared before the district judge for sentencing, the Government, for the first time, notified the court that Defendant was subject to the enhancement. After continuing the sentencing hearing to allow for briefing, the district court allowed the Government to withdraw from the agreement. The district court sentenced Defendant to 30-months in prison, a sentence that fell between what Defendant would have received pursuant to the plea agreement and what he would have received without the agreement. Defendant now appeals arguing the Government breached the plea agreement. He seeks specific performance of the agreement. Defendant also argues the district court imposed an unreasonable sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

I.

On October 4, 2001, Defendant pled guilty to second degree assault in Shelton County, Washington. Defendant served some jail time, and authorities deported him to Mexico. On March 14, 2006, after Defendant was arrested and charged with reentry of a deported alien previously convicted of an aggravated

2

felony, he entered a "Fast Track" plea agreement with the United States.[1]

Pursuant to the plea agreement, the parties stipulated that for purposes of

calculating Defendant's sentence, his offense level was 12.  Also, the Government

agreed to recommend a sentence at the lower end of the guideline range.  In

exchange, Defendant agreed not to collaterally attack reinstatement of his prior

order of deportation, seek appeal, or seek a downward departure.  Particularly

important to our disposition of this case is paragraph 8(a) of the plea agreement

which reads as follows:

> The Defendant and the United States agree pursuant to Fed. R. Crim.
> P. 11(c)(1)(C) that the Defendant's final adjusted sentencing
> guidelines offense level is twelve (12), and that Defendant's criminal
> history category will be determined by the United States Probation
> Office and reflected in the original presentence report prepared in
> this case.  This stipulation is based upon the information currently
> known to both parties; specifically, that the Defendant has no felony
> conviction that qualifies as a conviction under United States
> Sentencing Guidelines § 2L1.2(b)(1)(A) or § 2L1.2(b)(1)(B) which
> became final prior to the Defendant's most recent removal from the
> United States.  If the United States learns, prior to sentencing in this
> matter, that the Defendant has one or more such convictions, the
> United States reserves the right, in its sole discretion, to withdraw
> this plea agreement.

On April 26, 2006, the United States Probation Office completed the

presentence report (PSR) and provided it to the Government and Defendant.  The

---

[1]  The Fast Track program provides shorter sentences for defendants
charged with certain immigration offenses who, early in the process, plead guilty
and waive their rights to file certain motions and appeal.  See United States v.
Morales-Chaires, 430 F.3d 1124, 1127 (10th Cir. 2005).

PSR characterized Defendant's prior assault conviction as a crime of violence pursuant to U.S.S.G. §2L1.2(b)(1)(A)(ii), a circumstance requiring a 16-level sentencing enhancement. The enhancement raised Defendant's offense level from 12, which the parties agreed to in their plea agreement, to 21. The PSR noted Defendant's sentencing range would be 46 to 57 months should the enhancement apply.

Although the Government had ample time to object to the PSR and/or withdraw from the plea agreement, nothing transpired between the release of the PSR on April 26th and the sentencing hearing scheduled on June 15, 2006. Defendant appeared at the sentencing hearing on the morning of June 15th expecting the judge to sentence him to 12 to 15 months in prison as envisioned by the plea agreement. Moments into the hearing, the Government notified the court that it had only the night before reviewed the PSR and discovered the Probation Office considered Defendant's previous conviction a crime of violence. The Government argued Defendant should not be sentenced based on the offense level of 12 agreed to in the plea agreement. The Government asserted a 46 to 57 month sentence was appropriate as it took into account the crime of violence enhancement.

The Assistant United States Attorney (AUSA) apologized for the surprise, and explained to the judge he mistakenly made Defendant the wrong offer because he misinterpreted the Washington assault statute. The AUSA explained

4

the Government was not seeking to withdraw from the agreement because, "[the Government] had the same information when [it] made the offer as [it] does now." Instead, the AUSA asked the court to reject the plea agreement. The AUSA stated: "I made the wrong offer. And I think under Rule 11, the Court has the discretion, if the Court chooses, to use it to reject the plea agreement." The district judge decided to continue the sentencing hearing and allow the parties to submit briefing on whether Defendant's assault conviction qualified as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii) and the continued validity of the plea agreement.

Several weeks after the first sentencing hearing the parties submitted sentencing memoranda. In his sentencing memorandum, Defendant asked the court to specifically enforce the plea agreement. He also argued his prior assault conviction was not a crime of violence, and thus, the sentencing range envisioned in the plea agreement was reasonable. The Government, in its sentencing memorandum, argued Defendant's prior conviction was a crime of violence, but, contrary to its assertion at the June 15th hearing, the Government stated it acquired additional information regarding Defendant's prior felony conviction during the interim between signing the plea agreement and the sentencing hearing. According to the Government's memorandum, not until after the Government entered the plea agreement did the probation officer obtain a document entitled "Statement of Defendant on Plea of Guilty" from the state proceeding detailing

5

the circumstances of Defendant's assault conviction and convincing the Government the crime was indeed a crime of violence. The Government also changed course on the relief it requested. In its memorandum, the Government did not ask the court to reject the plea agreement, stating that to request such relief would "violate the spirit of the agreement." Instead, the Government asked the court to allow it to withdraw from its agreement with Defendant. The Government argued the revelations contained in the "Statement of Defendant on Plea of Guilty" invoked paragraph 8(a) of the plea agreement, and the Government should be allowed to withdraw from the plea agreement.

The parties reconvened before the district court for a sentencing hearing on August 25, 2006. At that hearing, the district judge allowed the Government to withdraw from its plea agreement and proceeded to sentence Defendant.[2] The court found the United States entered into the agreement on an erroneous factual assumption—namely that Defendant's prior conviction was not a crime of violence—and that under such circumstances, the plea agreement allowed the Government to withdraw. Analyzing the 18 U.S.C. § 3553 factors and considering the unfortunate snafu surrounding the plea agreement, the court

---

[2] At oral argument, the Government stated it never moved to withdraw from the plea agreement, and thus, the district court's actions at the August 25, 2006, amounted to the court's rejection of the plea agreement. The record does not support the Government's assertion. In its sentencing memorandum, the Government clearly stated, "This Court should allow the United States to withdraw from its agreement with Perez . . . ."

sentenced Defendant to 30 months in prison. The sentence did not fall within the 15-21 months envisioned by the plea agreement or the 46 to 57 months the Government urged absent the plea agreement.

## II.

We must first decide whether the Government breached the plea agreement when it sought to withdraw from the agreement after learning Defendant's prior assault conviction qualified as a crime of violence. A claim the Government has breached a plea agreement is a question of law that we review de novo. United States v. Peterson, 225 F.3d 1167, 1170 (10th Cir. 2000). We apply a two-step analysis to determine if the Government breached a plea agreement: "(1) we examine the nature of the Government's promise; and (2) we evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered." United States v. Guzman, 318 F.3d 1191, 1195-96 (10th Cir. 2003). Principles of general contract law guide our analysis of the Government's obligations under the agreement. See id. at 1195. Thus, in assessing whether the Government has breached the agreement, we look to the express terms of the agreement and construe any ambiguities against the government as the drafter of the agreement. See id.

Pursuant to the agreement, the Government promised to stipulate to an adjusted offense level of 12. Paragraph 8(a) qualified this promise by allowing the Government to withdraw from the agreement if the Government later learned

7

Defendant had a prior felony conviction that constituted a crime of violence. Thus, according to the plain language of the agreement, the Government was entitled to withdraw from the plea agreement when it became aware that Defendant's prior assault conviction was a crime of violence.

Defendant argues the Government's failure to withdraw from the agreement prior to the day of sentencing and the Government's apparent confusion as to its requested remedy amounted to a breach of the agreement. We do not think the Government's failure to notify the court of its desire to withdraw from the agreement prior to the day of sentencing constitutes a breach. Undoubtedly, the Government's delay was clearly in bad form.[3] Technically though, the Government notified the court that Defendant's previous conviction was a crime of violence and sought to withdraw from the agreement prior to Defendant actually being sentenced. The plea agreement did not require the Government to notify the court or Defendant of its intention to withdraw from the agreement one

---

[3] The Federal Rules of Criminal Procedure set forth clear deadlines for parties in criminal matters for objecting to PSRs precisely to prevent the problem we are dealing with today. Fed. R. Crim. P. 32(e) requires the probation office to provide the PSR to the defendant and the government's attorney no later than 35 days before sentencing. Fed. R. Crim. P. 32(f) requires the parties to object within 14 days of receiving the report if they take issue with the substance of the PSR. The Government's admission that it reviewed the PSR the night before sentencing only to discover Defendant's previous felony was a crime of violence, constitutes an admission that it did not follow the above required procedure. The Government is without excuse and is admonished to heed the dictates of Rule 32(f) in all sentencings.

8

week, two weeks or even one day before sentencing, but instead allowed the Government to withdraw from the agreement "prior to sentencing."

The Government's confusion concerning whether it wanted the court to reject the plea agreement or whether it wanted to withdraw from the plea agreement is also beside the point. In the confusion of the June 15th hearing, the AUSA asked the court to reject the plea agreement and stated the Government had the same information when it made the plea agreement as it did on that day. But, the sentencing memorandum, which was the Government's final word before the district court after reflection and investigation, clarified the Government's position. That document noted that not until after the parties signed the plea agreement did the Probation Office discover the "Statement of Defendant on Plea of Guilty" detailing the circumstances of the crime and establishing Defendant's assault conviction was indeed a crime of violence. The Government also sought withdrawal from the plea agreement in the sentencing memorandum, the remedy ultimately called for in the plea agreement.

As to the second prong of the test—Defendant's reasonable understanding of the promise at the time the guilty plea was entered—we note Defendant was well aware of the circumstances of his state court conviction when he entered into the plea agreement with Government. Defendant admitted in the "Statement of Defendant on Plea of Guilty" that he "assaulted Ms. Howland which caused substantial bodily harm in Mason County." Defendant should have known when

9

the Government discovered this information it would seek to withdraw from the plea agreement. When the Probation Office disclosed the PSR, however, Defendant sat quietly, apparently hoping the Government would not withdraw from the plea agreement. Because the plea agreement allowed the Government to withdraw from the agreement if Defendant's assault conviction was a crime of violence, Defendant should have objected to the "crime of violence" characterization long before the sentencing hearing. Defendant did not challenge the crime of violence characterization until after the Government exercised its right to withdraw from the plea agreement. We conclude under these circumstances, the plain language of the agreement allowed the Government to withdraw from the agreement and doing so did not amount to a breach of the agreement.

## III.

Defendant also argues the 30-month sentence the district court imposed was unreasonable. In considering the district court's application of the Guidelines, we review factual findings for clear error and legal determinations de novo. United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006). We review sentences imposed post-Booker for reasonableness. Id. at 1054-55. Reasonableness has both procedural and substantive components which encompass, respectively, the method by which the sentence was calculated and the length of the sentence. See id. at 1055. Defendant argues his sentence is both procedurally and substantively

10

unreasonable.

A.

To assess the procedural reasonableness of a defendant's sentence, we examine whether the district court appreciated the advisory nature of the Guidelines, correctly calculated the applicable Guidelines range, and considered the § 3553(a) factors when crafting the sentence. See United States v. Sanchez-Juarez, 446 F.3d 1109, 1114-15 (10th Cir. 2006). We also require the district court to explain its reasons, though not in great detail, for imposing a particular sentence. Id. at 1116 ("[T]he court's failure to give reasons for its decision would leave us in a zone of speculation on appellate review.") (internal quotations omitted).

1.

Defendant's argument concerning procedural reasonableness is twofold. First, Defendant argues the court erred in calculating his sentence by applying a 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). That provision provides the offense level of a defendant convicted of illegally reentering the United States is increased by 16 levels if the defendant was deported after a previous conviction for a felony "crime of violence." The term "crime of violence" is defined in the Guidelines to include certain specific offenses not at issue here, as well as "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the

11

person of another." § U.S.S.G. 2L1.2, comment 1(B)(iii). Defendant asserts the district court erred by applying the § 2L1.2(b)(1)(A)(ii) enhancement because the Washington assault statute under which he was convicted does not necessarily require the actual use, attempted use, or threatened use of physical force.[4]

We recently held in United States v. Perez-Vargas, 414 F.3d 1282, 1287 (10th Cir. 2005), that Colorado third-degree assault convictions, under a statute similar to the Washington assault statute, did not categorically qualify as crimes of violence under § 2L1.2(b)(1)(A)(ii) because the statutory language "does not necessarily include the use or threatened use of 'physical force' as required by the Guidelines." Id. We stated a reviewing court could properly look beyond an ambiguous assault statute to charging documents, the terms of the plea agreement, or some comparable judicial record to determine on a case-by-case basis whether an assault conviction qualifies as a crime of violence under § 2L1.2(b)(1)(A)(ii). Id. at 1284 (citing Shepard v. United States, 544 U.S. 13, 24-26 (2005)). The

---

[4] The relevant provisions of Washington's second degree assault statute, Wash. Rev. Code § 9A.36.021 provide:

   (1) A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

   (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm; or
                              ***
   (c) Assaults another with a deadly weapon; or
                              ***
   (e) With intent to commit a felony, assaults another . . . .

12

Government does not dispute Washington's assault statute is ambiguous,[5] but we need not tarry long on this issue because Defendant made a factual concession as part of his state court plea demonstrating his prior conviction qualifies as a crime of violence.

In the "Statement of Defendant on Plea of Guilty," filed in Washington State court and later made part of the record before us, Defendant acknowledged the elements of the crime to which he was pleading guilty were as follows: "[I]n Mason County, on 6/12/01, [Defendant] did intentionally assault Cecelia Howland, and inflicted substantial bodily harm." See United States v. Torres-Ruiz, 387 F.3d 1179, 1183 (10th Cir. 2004) (holding "intent" to use, or threaten to use, force is required under § 2L1.2(b)(1)(A)). These elements track most closely with Wash. Rev. Code § 9A.36.021(a) except the term "recklessly" is omitted. See supra, n. 4. When asked to state what he did in his own words, Defendant made the following admission: "On 6/12/01 I assaulted Ms. Howland which caused substantial bodily harm in Mason County." These admissions show Defendant intended to both assault his victim and use physical force against her, thus bringing his state conviction within the parameters of § 2L1.2(b)(1)(A)(ii). Compare United States v. Ortega-Estrada, 2006 WL 3491779, at *7-8 (10th Cir.

---

[5] The parties agree that the term "recklessly" as used in Wash. Rev. Code § 9A.36.021(a) removes convictions under subsection (a) from being considered, categorically, crimes of violence.

13

Dec. 5, 2006) (holding defendant's admission that he threatened his victim and cut her with a knife contained in his "Statement of Defendant on Plea of Guilty" filed in Washington state court, conclusively demonstrated his second degree assault conviction qualified as a crime of violence).

While Defendant's admissions are almost certainly adequate for us to conclude his assault conviction involved actual use, attempted use, or threatened use of physical force, we look further to Washington's common law definition of assault to determine the exact nature of Defendant's admission that he "assaulted" Ms. Howland.[6] See United States v. Quijada, 2005 WL 2093036, at *4 (10th Cir. August 31, 2005) (consulting Massachusetts's common law definition of assault and battery where the terms were not defined statutorily). Washington recognizes three common law definitions of assault including "(1) an attempt, with unlawful force, to inflict bodily injury upon another; (2) an unlawful touching with criminal intent; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm." Clark v. Baines, 84 P.3d 245, 247 n.3 (Wash. 2004) (internal citations and quotations omitted). Because Defendant pled guilty to intentionally assaulting his victim and causing her bodily harm, the first definition of assault— an attempt, with unlawful force, to inflict bodily injury upon another—is the most relevant

---

[6] We look to Washington's common law definition of assault because it is not defined statutorily. See Clark v. Baines, 84 P.3d 245, 247 n.3 (Wash. 2004).

14

definition. Application of this definition of assault certainly encompasses the "use, attempted use, or threatened use of physical force against the person of another," and thus qualifies as a crime of violence pursuant to § 2L1.2(b)(1)(A)(ii). Defendant's assertion that he could have been guilty of the third enumerated definition of assault—putting another in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm—does not survive our scrutiny. We do not see how application of this common law definition of assault jives with Defendant's admission he intentionally inflicted bodily harm on Ms. Howland. The relevant common law definition of assault along with Defendant's admissions lead us to conclude Defendant cannot establish the district court's application of the § 2L1.2(b)(1)(A)(ii) enhancement was error.

2.

Next, Defendant contends the district court failed to adequately explain its reasons for an upward variance in his sentence. Defendant's argument completely misses the mark as it is premised on the faulty notion that the proper guideline range was 15-21 months as envisioned by the plea agreement. By allowing the Government to withdraw from the plea agreement, the district court was in no way required to consider the stipulated adjusted offense level 12 and the 15-21 month guideline range. Because Defendant's assault conviction qualified as a crime of violence, the court applied a 16-level enhancement as required by

15

§ 2L1.2(b)(1)(A)(iii), and arrived at an adjusted offense level of 21 and a sentencing range of 46 to 57 months. Thus, Defendant's 30-month sentence was actually a downward departure from the applicable guideline range.

To the extent Defendant argues the district court did not adequately explain its refusal to vary even further from the advisory guideline range, we are not persuaded. Our cases have made clear a district court need only entertain the defendant's arguments for a below-Guidelines sentence, indicating on the record that it considered the § 3553(a) factors. Sanchez-Juarez, 446 F.3d at 1117. The district court need not explicitly reference each of the § 3553(a) factors or respond to every argument for leniency that it rejects in arriving at a reasonable sentence. United States v. Jarrillo-Luna, 478 F.3d 1226, 1229 (10th Cir. 2007). The record clearly shows the district court considered Defendant's arguments, as evidenced by the rather large downward variance, and weighed the § 3553 factors to fashion a just sentence.

B.

Defendant also argues his 30-month sentence was unnecessarily long and thus substantively unreasonable. The Supreme Court recently held that a sentence is substantively reasonable so long as the district court did not abuse its discretion. See Rita v. United States, 127 S. Ct. 2456, 2465 (2007). To assess substantive reasonableness, we consider whether the sentence imposed by the district court is unreasonable in light of the § 3553(a) factors. Kristl, 437 F.3d at

16

1054-55.

Defendant's primary argument concerning substantive reasonableness is that the recommended sentencing guidelines Congress fashioned for illegal re-entry cases are "presumptively unreasonable" because they have "devolved into an excessively harsh sentencing scheme." Defendant's argument is beyond our purview as it is essentially an attack on policy decisions made by the United States Sentencing Commission. As we have noted, disagreement with policy decisions incorporated into the Sentencing Guidelines is not a valid reason for imposing a sentence outside a properly calculated guideline range, or in this case varying even further from the properly calculated guideline range. United States v. McCullough, 457 F.3d 1150, 1171-72 (10th Cir. 2006); see also Ortega-Estrada, 2006 WL 3491779, at *12. Furthermore, our review of the record leads us to conclude the 30-month sentence imposed by the district court was reasonable in light of the § 3553(a) factors, and thus the district court did not abuse its discretion in imposing the sentence. Again, we note the district court considered the § 3553 factors, weighed the seriousness of Defendant's crime along with the unfortunate confusion with the plea agreement, and imposed a

sentence well below the recommended guideline range.

AFFIRMED.

Entered for the Court,

Bobby R. Baldock
Circuit Judge